# CITY OF ST. PAUL v. M. J. HOFFMANN.[1]

December 27, 1946.

No. 34,256.

*J. A. A. Burnquist,* Attorney General, *Arthur Christofferson,* Deputy Attorney General, and *Bert McMullen* and *Louis B. Brechet,* Special Assistant Attorneys General, for appellant.

*Bruce J. Broady,* Corporation Counsel, and *Ira Karon,* Assistant Corporation Counsel, for respondent.

*John A. Goldie,* for Minnesota State Bar Association, filed a brief as *amicus curiae* in support of the contention of appellant.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment in an action brought under the uniform declaratory judgments act in which the commissioner

[1]Reported in 25 N. W. (2d) 661.

of highways was enjoined from suspending the drivers' licenses of any of plaintiff city's employes involved in an accident while driving a municipally owned or operated vehicle.

The controversy here arises over the proper construction of Minn. St. 1945, § 170.51, which is L. 1945, c. 285, § 31, and reads as follows:

"Sec. 31. This act does not apply with respect to any motor vehicle owned and operated by the United States, this state or any political subdivision of this state or any municipality therein."

The apparent objective of the safety responsibility act is to provide financial responsibility for injuries and damages suffered in motor vehicle traffic. It seeks to achieve its objective solely by the suspension of licenses. While its announced purpose is to promote safety of travel, its provisions take effect after an accident happens and subject drivers and owners of vehicles involved to suspension of their "licenses" unless liability insurance coverage equivalent to that required by the act is carried by the owner or driver of the vehicle. "License," as defined in the act (§ 1, subd. 4), means authority to operate a motor vehicle. Just what the act means by the owner's "license" when the owner is not the driver is not clear. The owner, if he never drives, need not have a driver's license, and the registration of the vehicle does not fall within the definition of a license.

It is the contention of the city that its drivers are by virtue of the quoted section exempt from the provisions of the safety responsibility act. The state very earnestly contends that the act applies to such drivers and that the commissioner may suspend their drivers' licenses as in the case of other drivers.

Just how § 31 came into L. 1945, c. 285, is not disclosed by legislative history. The Minnesota State Bar Association, as *amicus curiae,* states in its brief that the law as enacted is in the exact form proposed by its committee, and it earnestly contends that drivers of city vehicles are not excluded from the act. We must interpret the language as it was enacted by the legislature, and

we cannot accept the authors' construction of its import unless that construction is consistent with the legislative intent as evidenced by the language used. Taking the act as a whole, we can discover no purpose in § 31 except to exempt the city's drivers from suspension of their licenses under the operation of the act. Since the act operates exclusively by suspension of licenses to operate motor vehicles and not against the vehicles themselves, the exclusion of the city's vehicles from the application of the act must have been intended to exempt the city's drivers. The purpose of the act was to effect financial responsibility to injured persons. The city is liable for injuries inflicted by negligent acts performed in the discharge of its corporate or proprietary functions. Boye v. City of Albert Lea, 74 Minn. 230, 76 N. W. 1131; Freeman v. City of Minneapolis, 219 Minn. 202, 17 N. W. (2d) 364. In cases involving the proprietary functions of cities, it would be futile to require additional security to the public. City employes are personally liable for their negligence when engaged in the performance of the city's governmental functions. Florio v. Jersey City, 101 N. J. L. 535, 129 A. 470, 40 A. L. R. 1353, and annotation; Miller v. Jones, 224 N. C. 783, 32 S. E. (2d) 594. The city is authorized by statute, but not required, to cover its employes against liability in such cases. Minn. St. 1945, §§ 471.42, 471.43.[3] It seems quite obvious to us that § 31 was inserted in the act to relieve municipalities, and others that are exempted, from embarrassment in the performance of their functions by finding the discharge of such functions hampered by the lack of licensed drivers.

If the law is to completely achieve its avowed purposes, the legislature could either waive governmental immunity from suit in negligence cases as the United States has done in the Federal Tort Claims Act (U. S. C. Public Law 601, Title IV, 79th Congress, 28 USCA, § 921), which the legislature could do not only in behalf of the state but of cities and other governmental subdivisions, or it could require such municipalities or subdivisions to cover their

---

[3]See, M. S. A. §§ 471.42, 471.43, and cf. Mason St. 1940 Supp. §§ 1920-1, 1920-2.

drivers with insurance. We therefore hold that the trial court was right in holding the drivers of vehicles owned or operated by the city exempt from the provisions of the act.

Affirmed.