

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 19, 1951

*See:*
*George J. Garrison*
*363 SW2d 381*
*(Texas civ.app. Waco, 1962)*
*Writ refused*

Hon. Homer Garrison, Jr., Director
Texas Department of Public Safety
Austin, Texas

Opinion No. V-1380

Re: Applicability of Texas
Motor Vehicle Safety
Responsibility Act,
House Bill 219, Acts
52nd Leg., R.S. 1951
(Article 670lh, V.C.S.)
to operators of public-

Dear Colonel Garrison:

ly owned motor vehicles.

Your request for an opinion in connection with the above-captioned matter states:

"Reference is made to Section 33, Article VI, H.B. No. 219, 52nd Texas Legislature, the 'Texas Motor Vehicle Safety-Responsibility Act.'

"The first portion of Section 33 of the Act referred to provides:

" 'This Act shall not apply with respect to any motor vehicle owned by the United States, the State of Texas or any political subdivision of this state or municipality therein; * * *'.

"H.B. 219, in effect, provides that under certain conditions (an accident involving property damage of a certain sum, under certain conditions, and upon conviction of certain offenses) the operator or owner of the motor vehicle involved shall be required to furnish proof of financial responsibility. If proof of financial responsibility is not furnished within the required time the Department is required to suspend the license of the operator and the registration of the owner of the motor vehicle involved in the accident.

"Let us assume that a motor vehicle owned by the State of Texas, or a political subdivision of the State, or a municipality within the State is involved in an accident in which someone is killed, or seriously injured or in which there is great property damage. Under the exceptions referred to we cannot suspend the registration on the vehicle involved. Would the operator of the vehicle referred to above be required to furnish proof of financial responsibility within the period provided by law? If your answer is yes, and such proof is not furnished are we required to revoke his drivers license and suspend the registration on all motor vehicles personally owned by him?

"Also let us assume that the operator of a city garbage truck is convicted of driving a city truck on a public street while intoxicated, or failure to stop and render aid, or some other offense for which his license to operate a motor vehicle must be suspended or revoked, and said truck driver does not then give and thereafter maintain proof of financial responsibility with respect to all vehicles registered by him as an individual, should the registration on motor vehicles privately owned by him be suspended? Could he register a new vehicle without furnishing proof of financial responsibility? (See Sec. 17 of the Act.)

"Officers of political subdivisions of the state are asking us about the status of their drivers under the Act. We have told them that there have been no court opinions on the newly enacted law and that we are asking you for an opinion on the matter."

You present for our determination two questions, as follows:

1. Is the operator of a motor vehicle owned by the United States, the State of Texas, a political subdivision of the State or a municipality of the State, required to furnish proof of financial responsibility under the provisions of House Bill 219, Acts 52nd Leg., R.S. 1951, ch. 498, p. 1210 (Article 6701h, V.C.S.)?

2. If the above question is answered in the affirmative, then is the Department of Public Safety, in the event of an accident by the operator of a publicly

owned vehicle under the conditions set out in the act, required to revoke the operator's driver's license and suspend the registration of his privately owned vehicles?

Article 6701h, V.C.S., the "Texas Motor Vehicle Safety-Responsibility Act" (H.B. 219, Acts 52nd Leg., R.S. 1951, ch. 498, p. 1210) is designed to compel owners and drivers of motor vehicles to maintain ability to satisfy claims for injury and damage arising out of accidents involving motor vehicles. Financial responsibility is nowhere required absolutely by the act, but is merely a condition to the continued privilege to drive or use a vehicle under certain circumstances. Ability to satisfy claims may be established under various circumstances by several methods, including maintenance of insurance against such claims, payment, or discharge from or satisfaction of such claims in designated ways and within the time specified.

Section 33 of the act provides in part as follows:

"This Act shall not apply with respect to any motor vehicle owned by the United States, the State of Texas or any political subdivision of this State or any municipality therein; . . ."

You have correctly stated that the question presented with reference to the above quoted provision has not been answered by the courts of this State. On the other hand, this question has been decided by the Supreme Court of Minnesota in City of St.Paul v. Hoffman, 25 N.W.2d 661 (Minn. Sup. 1946), under a provision of the laws of that State, which, in so far as pertinent here, is in almost the identical language as Section 33 of our act. There it was contended that the provisions of the Minnesota act providing that it "does not apply with respect to any motor vehicle owned and operated by the United States, this State or any political subdivision of this State or any municipality therein" did not have the effect of exempting from the provisions of the drivers' responsibility law an operator of a city-owned vehicle. The court in refusing such a construction said:

"The controversy here arises over the proper construction of Minn. St. 1945 and M.S.A. § 170.51, which is L. 1945, c. 285 § 31, and reads as follows: 'Sec. 31. This act does not apply with respect to any motor vehicle owned and operated by the United

States, this state or any political subdivision of this
state or any municipality therein.'

" . . .

"It is the contention of the city that its drivers
are by virtue of the quoted section exempt from the
provisions of the safety responsibility act. The state
very earnestly contends that the act applies to such
drivers and that the commissioner may suspend their
drivers' licenses as in the case of other drivers.

"Just how § 31 came into L. 1945, c. 285, is not
disclosed by legislative history. The Minnesota State
Bar Association, as amicus curiae, states in its brief
that the law as enacted is in the exact form proposed
by its committee, and it earnestly contends that drivers
of city vehicles are not excluded from the act. We must
interpret the language as it was enacted by the legislature,
and we cannot accept the authors' construction of its im-
port unless that construction is consistent with the legis-
lative intent as evidenced by the language used. Taking
the act as a whole, we can discover no purpose in § 31
except to exempt the city's drivers from suspension of
their licenses under the operation of the act. Since the
act operates exclusively by suspension of licenses to
operate motor vehicles and not against the vehicles them-
selves, the exclusion of the city's vehicles from the ap-
plication of the act must have been intended to exempt the
city's drivers. The purpose of the act was to effect fi-
nancial responsibility to injured persons. The city is
liable for injuries inflicted by negligent acts performed
in the discharge of its corporate or proprietary functions.
Boye v. City of Albert Lea, 74 Minn. 230, 76 N.W. 1131;
Freeman v. City of Minneapolis, 219 Minn. 202, 17 N.W.
2d 364. In cases involving the proprietary functions of
cities, it would be futile to require additional security
to the public. City employes are personally liable for
their negligence when engaged in the performance of the
city's governmental functions. Florio v. Jersey City,
101 N.J.L. 535, 129 A. 470, 40 A.L.R. 1353, and annotation;
Miller v. Jones, 224 N.C. 783, 32 S.E.2d 594. The city is
authorized by statute, but not required, to cover its em-
ployes against liability in such cases. Minn. St. 1945 and
M.S.A. §§ 471.42, 471.43. It seems quite obvious to us

that § 31 was inserted in the act to relieve munici-
palities, and others that are exempted, from embar-
rassment in the performance of their functions by
finding the discharge of such functions hampered by
the lack of licensed drivers.

"If the law is to completely achieve its avowed
purposes, the legislature could either waive governmen-
tal immunity from suit in negligence cases as the United
States has done in the Federal Tort Claims Act, Pub-
lic Law 601, Title IV, 79th Congress, 28 U.S.C.A. §
921, which the legislature could do not only in behalf
of the state but of cities and other governmental sub-
divisions, or it could require such municipalities or
subdivisions to cover their drivers with insurance.
We therefore hold that the trial court was right in
holding the drivers of vehicles owned and operated by
the city exempt from the provisions of the act." (Em-
phasis added.)

The above decision is the only one we have been able to
find construing such a provision in a drivers' responsibility act,
and in view of the fact that the Texas act, as well as that of Min-
nesota, was modeled after the Uniform Motor Vehicle Safety Re-
sponsibility Act, we feel compelled to follow the above construc-
tion. The Attorney General of California has reached a similar
conclusion. See Att'y Gen. Op. 48/205 (Cal. 1949).

You are, therefore, advised that the operator of a motor
vehicle owned by the United States, the State of Texas, a political
subdivision of the State or a municipality of the State is exempt
from the provisions of Article 6701h, V.C.S., while lawfully engaged
in the operation of such publicly owned vehicle.

Our answer to your first question makes unnecessary an
answer to your second question.

## SUMMARY

Section 33 of Article 6701h, V.C.S., the Texas
Motor Vehicle Safety-Responsibility Act, providing
that the "act shall not apply with respect to any motor

vehicle owned by the United States, the State of
Texas or any political subdivision of this State or
any municipality therein" has the effect of exempt-
ing from the provisions of the act the operator of a
publicly owned vehicle while lawfully engaged in the
operation of such vehicle.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

C. K. Richards
Trial & Appellate Division

E. Jacobson
Reviewing Assistant

By *Charles D. Mathews*

Charles D. Mathews
First Assistant

Price Daniel
Attorney General