# JOHN L. CORCORAN AND ANOTHER v. THE STATE AUTOMOBILE INSURANCE ASSOCIATION.

98 N. W. (2d) 50.

July 17, 1959—Nos. 37,735, 37,761.

 

*King & MacGregor, Maurice H. Rieke,* and *David W. Nord,* for defendant.

*Tyrrell, Jardine, Logan & O'Brien* and *Seifert, Johnson & Hand,* for plaintiffs.

THOMAS GALLAGHER, JUSTICE.

Western Casualty and Surety Company, hereinafter called Western, seeks recovery from The State Automobile Insurance Association, hereinafter called State Auto, of a portion of $36,000 paid by Western in settling actions arising out of an automobile collision occurring May 27, 1949. On June 5, 1958, the trial court determined that State Auto pay Western $9,000 of such sum. Both parties have appealed from the judgment entered pursuant thereto.

The collision involved an automobile owned and driven by Joseph H. Beck and a truck owned by Walter Schouweiler and driven by Richard W. Laqua with the owner's permission. As a result of the accident Joseph H. Beck suffered severe injuries and his wife, Sophia, a passenger in his car, met death. In subsequent litigation Joseph H. Beck recovered verdicts of $10,000 for his wife's wrongful death; $40,000 for his own injuries and property damages fixed at $1,500 and included in the award. Thereafter, Western, which carried the insurance on the Schouweiler truck, made settlement with Beck by paying him $10,000 for the wrongful-death verdict and $26,000 for the verdict covering his injuries and property damage. At that time, Beck assigned to John L. Corcoran, as trustee for Western, the judgments arising out of the verdicts.

On the date of the accident there were in effect three policies of insurance which are involved in this litigation as follows:

(1) WESTERN POLICY. Issued to *Walter Schouweiler,* occupation, "Hauling Livestock and/or other Property," covering his 2½-ton Ford truck for "Commercial" use "in the business occupation of the named insured * * * including occasional use for personal, pleasure, family and other business purposes," with limitations of $25,000 for injuries

to each person; $50,000 for each accident; and $5,000 for property damage. (It is agreed that this policy extended coverage to the driver Laqua as an insured.)

(2) WESTERN POLICY. Issued to *Richard Laqua* (driver of the Schouweiler truck), occupation "Hauling Livestock and/or other Property," covering his 2-ton Ford truck (not in the accident) for "Commercial" use, "in the business occupation of the named insured * * * including occasional use for personal, pleasure, family and other business purposes," with limitations of $10,000 for injuries to each person and $20,000 for each accident; and $5,000 for property damage.

(3) STATE AUTO POLICY. Issued to *Richard Laqua,* occupation "Trucker," covering his 1½-ton Ford truck (not involved in the accident) for "Commercial" use "in the business occupation of the named insured * * * including occasional use for personal, pleasure, family and other business purposes," with limitations of $10,000 for injuries to each person and $20,000 for each accident; and $5,000 for property damage.

The State Auto policy contains the following provision:

"V. USE OF OTHER AUTOMOBILES: Such insurance as is afforded by this policy * * * with respect to the automobile classified as 'pleasure and business' applies (1) to the named insured * * * with respect to the use of any other automobile by or in behalf of such named insured * * *. This * * * does not apply:

\* \* \* \* \*

"(c) to any automobile not of the private passenger type while used in the business or occupation of the named insured * * *."

Each of the above policies contains standard provisions to the effect that (1) the unqualified word "insured" includes the named insured and also includes any person while using the automobile of the named insured with the latter's permission; and (2) if the insured has other insurance against a loss covered by the policy, the insurer shall not be liable for a greater proportion of the loss than the applicable limits of its policy bears to the total applicable limits of all policies against the loss, provided that the liability under the USE OF OTHER AUTOMO-

BILES provision above quoted shall be "excess insurance over any other * * * collectible insurance available to the insured" under any policy applicable to the vehicle involved in an accident.

On the date of the accident both Schouweiler and Laqua were engaged in the business of hauling livestock in their respective trucks and possessed permits for that purpose issued by the Minnesota Railroad and Warehouse Commission. Pursuant to the requirements of these permits, each of the three policies above described contained the following endorsement:

"* * * the *Company hereby agrees to pay any final judgment recovered against the insured* for bodily injury to or the death of any person or loss of or damage to property of others * * * resulting from the negligent operation, maintenance, or *use of motor vehicles under * * * permit issued to the insured* by the Minnesota Railroad and Warehouse Commission * * * within the limits of liability hereinafter provided [same limitation as in policy], *regardless of whether such motor vehicles are specifically described in the policy or not.*

> \* \* \* \* \*

"*Nothing contained in the policy or any other endorsement thereon* * * * shall relieve the company from liability hereunder or from payment of any such final judgment.

"The insured agrees to reimburse the company for * * * *any payment that the company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement.*" (Italics supplied.)

Shortly prior to the accident, Schouweiler and Laqua had hauled cattle to South St. Paul in their respective trucks. At Hastings on the return trip Laqua's truck was passed by Schouweiler's truck. Laqua followed Schouweiler for some distance, seeking to overtake the latter so they might talk about trading trucks. At Miesville, Schouweiler stopped at a tavern and Laqua caught up with him there. They then had a prolonged discussion with reference to the trade. Laqua then left the tavern to drive the Schouweiler truck south to Lake City for the purpose of trying it out. He planned to meet and talk with Schouweiler there but had driven only a mile on his way when the accident happened.

After settlement of the verdicts and assignment of the judgments to Corcoran as trustee for Western, the present actions were commenced against State Auto to recover $21,500 of the $36,000 paid by Western to Beck (the $20,000 applicable limits for injuries and $1,500 for property damage). As indicated above, the trial court ordered judgment that State Auto was obligated to pay Western $9,000, which sum equals one-fourth of the total amount paid by Western in settlement of the Beck verdicts. Both Western and State Auto have appealed from the judgment subsequently entered pursuant thereto.

It is the contention of Western that, since the provisions of V of State Auto's policy, extending coverage to the insured while using other automobiles, applied only if the automobile described in the policy were classified as "pleasure and business"; and, since further, by its terms, it excluded coverage from automobile not of the private passenger type while used in the business or occupation of the named insured, it must follow that excess coverage provisions of State Auto's policy were not applicable because (1) no car in State Auto's policy was classified as "pleasure and business"; and (2) at the time of the accident, as the court determined, Laqua was operating a truck in his business or occupation.

For a pro rata contribution from State Auto, Western relies upon the endorsement attached to State Auto's policy required by the Minnesota Railroad and Warehouse Commission, which provides that State Auto is to pay any final judgment recovered against its insured for bodily injuries, death, or property damage resulting from the negligent operation of motor vehicles under the permit issued by the commission. With respect thereto, State Auto contends that this endorsement has no relevancy in determining the liabilities of the various insurers; that its function is for the protection of the traveling members of the public when no other responsible insurer covers a loss; and that as to the respective liabilities of the two insurers here the remaining provisions of the various policies govern. It further asserts that under the terms of the described endorsement as subrogee of its insured it could seek reimbursement from Western for any additional liability incurred by reason thereof, so that nothing is to be gained by compelling it to first contribute to Western any part of the payments made by the latter.

■ It is clear that Western is the primary insurer of the losses arising out of the accident, Eicher v. Universal Underwriters, 250 Minn. 7, 83 N. W. (2d) 895; and Western concedes that under the "omnibus clause" of its policy at the time of the accident its coverage extended to Laqua, the driver of the truck involved therein, as well as to Schouweiler, its owner.

■ Under V of State Auto's policy issued to Laqua, as above quoted, which governs State Auto's liability in his "USE OF OTHER AUTOMOBILES," it is apparent that the insurance afforded by this policy did not cover Laqua in his use of Schouweiler's truck at the time of the accident. The extended coverage provided for in paragraph V does not apply except with respect to automobiles classified in the policy as "pleasure and business" of which there were none. Further, this paragraph specifically excluded the extension of coverage to automobiles not of the private passenger type while used in the business or occupation of the named insured. Here, Laqua, the named insured, was driving a *truck* in pursuit of his "business or occupation" at the time of the accident. Obviously, under the clear terms of paragraph V of State Auto's policy, its coverage did not extend to Laqua while driving Schouweiler's truck, and accordingly no liability attached to State Auto for any losses arising out of his actions in so doing.

■ This leaves for consideration the effect of the endorsement attached to State Auto's policy as required by the Minnesota Railroad and Warehouse Commission. If there were no other insurance in effect covering the losses arising out of the accident, it is apparent that this endorsement would render State Auto liable (up to the limits of its policy) for any final judgment recovered against Laqua by virtue of the fact that at the time of the accident he was operating a motor vehicle under the permit issued to him by the Minnesota Railroad and Warehouse Commission and for the purposes authorized thereby.

But where there is other insurance fully covering the loss, as in the instant case, it would seem logical that the standard liability provisions of the policies should govern. Obviously, the described endorsement was required by the commission for protection of members of the traveling public and not as a measure of the liability obligations existing between the insurers under their respective policies. This is

manifest by the provision therein that "The insured agrees to reimburse the company for * * * any payment that the company *would not have been obligated to make under the provisions of the policy, except for the * * * endorsement.*" (Italics supplied.)

There have been no previous decisions of this court construing an endorsement of this kind. A somewhat similar situation was considered, however, in Citizens Cas. Co. v. Allied Mutual Ins. Co. 217 Md. 494, 144 A. (2d) 73. There, Citizens, to comply with a Financial Responsibility Law, was required to affix to its policy an "absolute liability" clause similar to the endorsement in the instant case. There, as here, another insurer (Allied Mutual) claimed contribution from Citizens under this clause. In rejecting this claim, the court there stated (217 Md. 505, 144 A. [2d] 79):

"Though Citizens could not, because of Section 131 (a) (6) (F) [the Financial Responsibility Law], set up against injured third parties, who are members of the public, a defense based upon its insurance being excess rather than primary insurance, this is not conclusive in the present controversy. This is not a suit by injured third parties on one side against one or more insurers on the other, but is a controversy between two insurers as to whether one or the other, or both of them, should bear the ultimate loss resulting from an accident caused by a person covered by their respective policies, where such loss includes, and consists chiefly of, the amounts paid to the injured third parties. The result of the *Celina* case [194 Md. 236, 71 A. (2d) 20, 21 A. L. R. (2d) 605] seems quite inconsistent with any idea that one insurance company is a party sought to be protected, as a matter of legislative policy, by an insurance policy furnished by another insurance company pursuant to * * * [Financial Responsibility Law]."

See, also, Continental Cas. Co. v. Weekes (Fla.) 74 So. (2d) 367, 46 A. L. R. (2d) 1159.

It seems reasonable to apply a like construction here. It would be consistent with the language of the endorsement, as well as the other terms and provisions of the policies, when viewed in the light of the surrounding facts and circumstances. This would mean that the liability for the loss as between the two insurers would be determined

by the standard terms and provisions of the respective policies rather than by the endorsement affixed at the instigation of the commission. Giving full effect to such terms and provisions compels the conclusion that Western alone is responsible for the losses arising out of the accident and that the trial court erred in ordering State Auto to make any contribution therefor.

The judgment appealed from is reversed and the case remanded for further proceedings in accordance with the opinion.