HOWARD LEPPLA, TRUSTEE FOR THE WRONGFUL
DEATH OF BARBARA LEPPLA, v.
AMERICAN FAMILY INSURANCE GROUP.

238 N. W. 2d 592.

January 9, 1976—Nos. 45322, 45362.

*Peterson, Bell & Converse, Willard L. Converse,* and *Martin J. Costello,* for defendant.

*Schermer, Schwappach, Borkon & Ramstead, Irvin E. Schermer,* and *Richard I. Diamond,* for plaintiff.

Heard before Peterson, Kelly, and MacLaughlin, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

Plaintiff's daughter, Barbara Leppla, died as a result of an accident while riding as a passenger in an automobile operated by defendant's insured, David L. Roehler. In an action to recover damages for wrongful death, plaintiff obtained a $10,000 stipulated default judgment against Roehler. Plaintiff then brought suit against defendant, American Family Insurance Group, for the $10,000 judgment, plus punitive damages. Defendant denied liability, alleging that it did not insure the car involved in the accident and stating further that it did not receive any notice of the accident or the subsequent action against its insured, Roehler. Plaintiff countered that defendant was estopped from denying liability because of the Safety Responsibility Act (SRA), Minn. St. 1971, c. 170. Both parties moved for summary judgment. The district court granted summary judgment to plaintiff in the amount of $10,024 plus interest and costs, but denied plaintiff's claim for punitive damages. Defendant appeals from the summary judgment, and plaintiff also appeals from the judgment on the issue of punitive damages. For reasons stated herein, we reverse the determination of the trial court that plaintiff was entitled to summary judgment.

Most of the facts are not in dispute. On March 12, 1971, defendant through its wholly owned subsidiary, American Standard Insurance Company, issued an automobile liability policy to Roehler covering the operation of a 1963 Ford. Roehler was required to furnish proof of financial responsibility under the SRA. Thus, defendant filed the required form, an SR-22 certificate, with the commissioner of highways showing liability coverage for Roehler while driving the 1963 Ford.

On or about August 15, 1971, Roehler, through defendant's agent, requested that the insurance on the 1963 Ford be transferred to a 1971 Honda. Prior to March 1, 1970, defendant would have informed the commissioner of highways of this change by filing with the commissioner a change of vehicle certificate, referred to as form SR-24. However, on March 1, 1970, the financial responsibility procedure was altered by the commissioner so that the change of vehicle certificate was no longer required. Under the new procedure, the original SR-22 certificate by its terms covered the vehicle described on the certificate or "any replacement(s) thereof by similar classification." Consequently, defendant did not file a change of vehicle certificate, and thus the filed SR-22 certificate for Roehler described the 1963 Ford while the insurance policy actually in effect described the 1971 Honda.

At the time of the accident, October 18, 1971, Roehler was driving the 1963 Ford which he still owned. On November 13, 1972, after commencement of the lawsuit against him, Roehler stipulated to a default judgment for $10,000 in exchange for plaintiff's agreement that if plaintiff failed to recover against any insurance carrier he would accept $500 from Roehler as full payment of the judgment. Defendant did not receive any notice of the accident, the suit against Roehler, or of the resulting judgment, until November 19, 1973.

On June 13, 1972, National Family Insurance Company, which insured plaintiff, paid $19,000 to plaintiff for the wrongful death of Barbara Leppla under an uninsured motorist provision con-

tained in the National Family policy. At the same time, National Family obtained from plaintiff a release and trust agreement in which plaintiff agreed to reimburse National Family up to the amount of $19,000 if plaintiff recovered against any other party.

On January 28, 1974, plaintiff brought suit against defendant for the $10,000 judgment, plus punitive damages. In its answer defendant denied liability, alleging that its insurance policy did not provide coverage for the 1963 Ford and that defendant had received no notice of the accident or the suit against its insured. Both sides then moved for summary judgment on the question of defendant's liability under the SR-22 certificate, which showed the 1963 Ford as being insured by defendant. The trial court, based on Minn. St. 1971, § 170.38, which requires that an SR-22 certificate "shall designate by explicit description * * * all motor vehicles covered thereby, unless the policy is an operator's policy," held that defendant was estopped to deny coverage on the 1963 Ford because of its failure to file a notice with the commissioner that there had been a change of insured vehicle. The trial court then ordered summary judgment for plaintiff, but denied plaintiff's claim for punitive damages, and this appeal followed.

The principal issues are (a) whether Minnesota's Safety Responsibility Act can be used to impose liability upon defendant insurance company when plaintiff is bound by an agreement to pay the proceeds of any recovery from defendant to his uninsured motorist carrier, and (b) whether a filed SR-22 certificate which describes a particular vehicle estops an insurer from asserting that coverage of the described vehicle has been transferred to a replacement vehicle, thereby leaving the described vehicle uninsured. We have concluded that it is unnecessary for us to decide the second issue because the first issue is determinative of this appeal.

It is clear that on the basis of the insurance policy alone defendant would not be liable to plaintiff. Not only was Roehler

driving a vehicle not covered by the policy, but he also failed to give defendant any notice of the accident or the subsequent suit. It is for this reason that plaintiff must rely on the provisions of the SRA [1] to impose liability on defendant. However, the critical issue before us is whether plaintiff is in a position to properly claim the benefits of the act.

The Minnesota Safety Responsibility Act was enacted to "make the owner of motor vehicles liable to those injured by their operation upon public streets or highways where no such liability would otherwise exist." (Italics omitted.) Christensen v. Hennepin Transportation Co. Inc. 215 Minn. 394, 409, 10 N. W. 2d 406, 415 (1943) ; Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 275 N. W. 416 (1937). The act subjects "drivers and owners of vehicles involved to suspension of their 'licenses' unless liability insurance coverage * * * is carried by the owner or driver of the vehicle." City of St. Paul v. Hoffmann, 223 Minn. 76, 77, 25 N. W. 2d 661, 662 (1946). Since the SRA "is remedial and will be broadly construed to carry out its purpose of providing compensation to those who have been injured," an "insurer on a compulsory insurance liability policy may be held liable to one injured by the insured notwithstanding the fact that the insured himself has lost his rights under the policy by failure to comply with its terms and conditions." Nimeth v. Felling, 282 Minn. 460, 463, 165 N. W. 2d 237, 239 (1969).

Although plaintiff in the instant case is nominally the injured party and thus within the protection of the SRA, the facts show that plaintiff has no beneficial interest in the recovery. If plaintiff recovers the $10,000 judgment, he is obligated under the release and trust agreement to pay the entire sum to his uninsured motorist carrier, National Family Insurance Company. If plaintiff fails to recover the $10,000, he is not obligated to pay any-

---

[1] Those portions of the Safety Responsibility Act applicable to the circumstances of this case were repealed by L. 1974, c. 408, § 33, effective January 1, 1975.

thing to his insurance company. Thus, the party with the actual beneficial interest in this action is National Family Insurance Company. The question, then, is whether National Family, as plaintiff's uninsured motorist carrier, may claim the benefits and protection of the SRA.

As indicated above, the dominant purpose of the SRA is to assure that members of the traveling public are compensated for injuries sustained in traffic accidents, and its provisions should be liberally construed to effect that legislative aim. But "[w]hile the statute is remedial, it is remedial solely in favor of an injured third person." Christensen v. Hennepin Transportation Co. Inc. 215 Minn. 394, 412, 10 N. W. 2d 406, 416.

In City of St. Paul v. Hoffmann, *supra*, this court endorsed the general principle that the SRA is not applicable so long as the public is assured of adequate compensation. In holding drivers of city vehicles exempt from the provisions of the SRA, we stated (223 Minn. 78, 25 N. W. 2d 663):

"* * * The purpose of the [SRA] was to effect financial responsibility to injured persons. The city is liable for injuries inflicted by negligent acts performed in the discharge of its corporate or proprietary functions. [Citations omitted.] In cases involving the proprietary functions of cities, it would be futile to require additional security to the public."

In Corcoran v. The State Auto. Ins. Assn. 256 Minn. 259, 264, 98 N. W. 2d 50, 54 (1959), a significant case for purposes of resolving the issue before us, we stressed that compulsory liability insurance is intended to compensate only "members of the traveling public." The facts in Corcoran were similar to the instant case. Joseph Beck, who was injured when his automobile collided with a truck, obtained a judgment against both the owner and the driver of the truck. Western Casualty, which held a policy covering the owner of the truck, compensated Beck and obtained an assignment of Beck's judgment to the plaintiff, John Corcoran, as trustee for Western Casualty. The plaintiff then

sought judgment from the truckdriver's insurance company, State Auto, on the basis of an endorsement in the State Auto policy which was required by the Minnesota Railroad and Warehouse Commission. The endorsement obligated State Auto to pay any judgment against its insured (the truckdriver) resulting from the negligent operation of a motor vehicle for which a permit had been issued by the commissioner. The plaintiff sought to recover on the basis of the endorsement because it was clear that State Auto would not otherwise have been liable under the provisions of its policy which expressly excluded coverage of a motor vehicle not of the private-passenger type while used in business. We refused to impose liability on the basis of the endorsement stating (256 Minn. 264, 98 N. W. 2d 54):

"* * * [W]here there is other insurance fully covering the loss, as in the instant case, it would seem logical that the standard liability provisions of the policies should govern. Obviously, the described endorsement was required by the commission for protection of members of the traveling public and not as a measure of the liability obligations existing between the insurers under their respective policies."

In reaching our decision, we relied on Citizens Cas. Co. v. Allied Mutual Ins. Co. 217 Md. 494, 144 A. 2d 73 (1958), which rejected Allied Mutual's claim for contribution from another insurance company (Citizens) on the basis of Maryland's financial responsibility law. We cited with approval the following language from the Maryland decision (256 Minn. 265, 98 N. W. 2d 54):

" 'Though Citizens could not, because of Section 131 (a) (6) (F) [the Financial Responsibility Law], set up against injured third parties, who are members of the public, a defense based upon its insurance being excess rather than primary insurance, this is not conclusive in the present controversy. This is not a suit by injured third parties on one side against one or more insurers on the other, but is a controversy between two insurers as to whether one or the other, or both of them, should bear the

ultimate loss resulting from an accident caused by a person covered by their respective policies, where such loss includes, and consists chiefly of, the amounts paid to the injured third parties. The result of the *Celina* case [194 Md. 236, 71 A. (2d) 20, 21 A. L. R. (2d) 605] seems quite inconsistent with any idea that one insurance company is a party sought to be protected, as a matter of legislative policy, by an insurance policy furnished by another insurance company pursuant to * * * [Financial Responsibility Law].' "

Adopting the above principle, we concluded in Corcoran that (256 Minn. 265, 98 N. W. 2d 54):

"* * * [T]he liability for the loss as between the two insurers would be determined by the standard terms and provisions of the respective policies rather than by the endorsement affixed at the instigation of the commission."

We then held that Western Casualty alone was responsible for the losses arising out of the accident and that State Auto was not required to make any contribution toward the payment of damages.

Other courts have arrived at similar conclusions concerning public liability insurance coverage. Thus, it has been held that, as between two insurance companies, compulsory liability insurance does not render a company a primary insurer. Miller v. National Farmers Union Property & Cas. Co. 470 F. 2d 700 (8 Cir. 1972); Marwell Const. Inc. v. Underwriters at Lloyd's, London, 465 P. 2d 298 (Alaska 1970). Similarly, excess clauses in insurance policies which would have been void against injured parties have been held valid against other insurance companies. Allstate Ins. Co. v. Shelby Mutual Ins. Co. 269 N. C. 341, 152 S. E. 2d 436 (1967); Allied Mutual Ins. Co. v. Farm Bureau Mutual Ins. Co. 257 Iowa 100, 131 N. W. 2d 798 (1964). The recurring general principle in all of these cases is that so long as the public is protected the insurance policy may contain any provisions not contrary to statute or the public interest. And as between the

insurance companies, the policy provisions limiting their liabilities are effective and determinative. See, Continental Cas. Co. v. Travelers Ins. Co. 84 Ill. App. 2d 200, 228 N. E. 2d 141 (1967).

Although none of the above cases involved a dispute between an uninsured motorist carrier and a public liability insurer,[2] we hold that the logic of the general rule extends to the question at issue on this appeal. In the instant case, plaintiff's decedent died in an automobile accident; and plaintiff, as trustee, was subsequently compensated for that injury from an insurance fund. The purpose behind SRA was thereby fulfilled. The question of which insurance company should ultimately bear the burden of loss is an issue to be resolved according to the terms of the particular insurance policies involved. The fact that one of the insurance companies was an uninsured motorist carrier is irrelevant to the resolution of this question. We believe that plaintiff's argument that a liability carrier for a joint tortfeasor is not entitled to credit for payments made by an uninsured motorist carrier is not applicable under the facts of this case. This argument assumes that the liability carrier is in fact liable when in this case, under the terms of the insurance policy and disregarding the effect of the SRA, it is not.

The question before us is not whether an uninsured motorist carrier can demand payment from a liability carrier covering the same risk, but whether an uninsured motorist carrier can use the provisions of the SRA to impose liability upon another insurance carrier where no such liability would otherwise exist.

---

[2] In National Service Fire Ins. Co. v. Jordan, 258 S. C. 56, 187 S. E. 2d 230 (1972), the court allowed an uninsured motorist carrier to use the provisions of that state's financial responsibility law to impose liability on the compulsory insurance carrier. However, the issue of whether the statute provided protection to an insurance company was neither raised nor considered by that court. See, also, United States Fidelity & Guaranty Co. v. Security Fire and Ind. Co. 248 S. C. 307, 149 S. E. 2d 647 (1966).

On the facts here, under the terms of the policy and by failing to comply with the conditions of the policy, Roehler was in effect an uninsured motorist. By accepting premiums, National Family agree to indemnify plaintiff against injury by an uninsured motorist. Thus, National Family was contractually bound to compensate plaintiff for the injury caused by Roehler. In contrast, defendant insurance company did not agree to provide coverage for the 1963 Ford, nor did it agree to assume the risk that its insured would give no notice of the accident or the subsequent litigation. Therefore, inasmuch as we find no legal or equitable basis for extending the remedial provisions of that act to the trustee for National Family, we reverse the trial court's determination that plaintiff was entitled to summary judgment against defendant.

Reversed.