**TRANSAMERICAN INSURANCE COMPANY, Respondent,**

v.

**AUSTIN FARM CENTER, INC., et al., Defendants,**

**Western Casualty & Surety Company, Respondent,**

**Wayne H. Austin Distributing Company, Inc. and Centennial Insurance Company, Appellants.**

and

**WESTERN CASUALTY AND SURETY COMPANY, Respondent,**

v.

**Arthur E. SCHERER, et al., Defendants,**

**Wayne H. Austin Distributing Company, Appellant.**

No. C3-84-65.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Gislason & Martin, James T. Martin, Minneapolis, for Transamerican Insurance Company.

Edward R. Soshnik & Associates, Janet Waller, Minneapolis, for Western Casualty & Surety Company.

Mahoney, Dougherty & Mahoney, Richard P. Mahoney, Sandra J. Skluzacek, Minneapolis, for Wayne H. Austin Distributing Company, Inc. and Centennial Insurance Company.

Heard, considered and decided by SEDGWICK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

This is a declaratory judgment action by respondent Transamerica to determine whether its policy of liability insurance covered defendant Austin Farm Center, Inc., in an accident that occurred on June 16, 1979, involving a fire truck jointly owned by Austin and two other corporations. Respondent Western Casualty also brought an action to determine the coverage afforded their insured, one of the other corporations, defendant Management Art, Inc. Appellant Centennial Insurance insured the third corporate defendant, Wayne H. Austin Distributing Co.

The trial court held the Transamerica policy was voided for material misrepresentations which increased the risk under Minn.Stat. § 60A.08, subd. 9 (1982), that Centennial's policy provided primary coverage and that Western's policy provided secondary coverage. The only parties to this appeal are Centennial, Western and Transamerica. We affirm.

## FACTS

In 1977 William Schottler, the controlling stockholder of Austin Farm Center, Inc. (AFC), purchased for AFC a 1949 Chevrolet fire truck. The truck was used primarily for washing its fertilizing equipment and, on a few occasions, for promotional purposes off its premises. The truck was insured by Transamerica under a combination automobile liability and general liability policy that contained a "permissive use" clause. Shortly thereafter, AFC sold a one-fourth interest in the truck to Wayne H. Austin Distributing Company, Inc. (WAD) (principal Robert Austin) and Management Art, Inc. (MA) (principal Arthur Scherer).

MA and WAD used the fire truck primarily for personal and promotional purposes, including a few occasions in Clear Lake and Mason City, Iowa, and Albert Lea, Minnesota, where MA owned and operated several McDonald's Restaurants.

Centennial Insurance Co. issued an automobile liability policy to WAD. Western Casualty and Surety Company issued an automobile liability policy to Art Scherer with coverage provided under the "non-owned vehicles" clause.

On June 16, 1979, Art Scherer was using the fire truck for a birthday party. While giving birthday guests rides on the fire truck, Deanna Kolas, a guest, fell off the truck and was killed. A trustee of Kolas' estate commenced a wrongful death action against the three corporations that was eventually settled.

Thereafter, Transamerica instituted this declaratory action on the issues of policy coverage and order of payment. Transamerica sought to avoid liability on the grounds of an alleged material misrepresentation of fact which substantially increased the risk of loss in connection with the application by AFC. Western conceded it was bound to provide personal indemnity to Scherer under its policy pursuant to the "non-owned vehicles" clause but argued that the Transamerica and Centennial policies provided prior levels of coverage and that those coverages must be exhausted before reaching the coverage provided by Western.

The trial court found there had been a material misrepresentation of fact which substantially increased the risk of loss in connection with the application for the Transamerica policy and relieved Transamerica from liability. The court concluded that the Centennial policy covering WAD, part-owner of the fire truck, provided primary coverage and Western's policy on Scherer's non-owned vehicles provided secondary coverage. Centennial appeals.

## ISSUES

1. Was the Transamerica coverage voided due to the alleged misrepresentations by its insured, AFC?

2. Which insurer provides primary coverage on the wrongful death claim?

## ANALYSIS

### I

#### Misrepresentation

Coverage under the Transamerica policy is possible under two provisions, one covering "mobile equipment" and the other covering "an owned automobile." Transamerica asserts neither provision is applicable because AFC, through a corporate officer, Schottler, materially misrepresented facts in applying for and procuring the insurance policy. Transamerica claims this misrepresentation increased the risk of loss, thereby allowing Transamerica to rescind the policy. In particular, Transamerica claims that AFC failed to disclose the multiple corporate ownership of the fire truck and that

extensive promotional uses were intended off the premises.

This is what happened: After purchasing the truck, Schottler procured insurance through an agent of Transamerica authorized to solicit and bind insurance on its behalf. During the negotiations of coverage for general liability and automobile insurance for AFC, coverage for the fire truck was discussed. The agent testified he told Transamerica's underwriter that the truck was used primarily on AFC's premises and only occasionally off the premises. He requested that it be treated as mobile equipment without a separate premium being charged. The underwriter denied ever being told the truck was to be used off the premises and further testified that Transamerica would never have agreed to insure the truck as a motor vehicle if it had been told the truck would be put to that use.

In addition, neither Transamerica nor the agent were ever advised that the fire truck was owned by two other corporations. The agent testified that additional ownership increased the risk of loss, and he would not have written the coverage had he been given all the facts.

Western and Centennial both contend this additional information is irrelevant because the policy contained a "permissive user clause" covering any use or operation of the fire truck with the permission of AFC. They claim multiple ownership was insignificant because any use by WAD and MA would have been with AFC's permission.

### A. Did the Misrepresentations Increase Risk of Loss.

The scope of this court's review of findings made by a court sitting without a jury is set forth in Rule 52.01, Minnesota Rules of Civil Procedure which provides in part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01; *see Northern States Power Co. v. Lyon Food Products, Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

In order to rescind a policy of insurance, it must be proved that the alleged misrepresentation materially increased the risk of loss.

> No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss.

Minn.Stat. § 60A.08, subd. 9 (1982); *see Waseca Mutual Ins. Co. v. Noska,* 331 N.W.2d 917 (Minn.1983); *Preferred Risk Mutual Ins. Co. v. Anderson,* 277 Minn. 342, 152 N.W.2d 476 (1967). The insurer has the burden of proof on all issues of fact relative to the alleged misrepresentation by insured. *Id.* at 347, 152 N.W.2d at 481. Whether a misrepresentation increased the risk of loss is a question for the trier of fact "unless the evidence is conclusive one way or the other." *Craigmile v. Sorenson,* 248 Minn. 286, 295, 80 N.W.2d 45, 51 (1956).

Although the policy does not limit in any way the authority of AFC to give permission to any individual to use the unit, there would be more use under multiple ownership than with one owner. Multiple ownership logically increases authority for permissive use, which, in turn, increases the risk of loss. There was, in fact, an increased use of the fire truck by all the corporate owners in making long trips for promotional purposes.

### B. Burden of Proof.

Centennial next argues that Transamerica did not sustain its burden of demonstrating AFC misrepresented the intended use of the truck at the time the policy was procured. "[T]he question whether there was a misrepresentation must be decided in relation to the facts in existence at the time the representations were made

and not to facts later developed." *Preferred*, 277 Minn. at 347–48, 152 N.W.2d at 481. Centennial argues Transamerica's agent was fully apprised of the fact the fire truck was to be used on and off AFC's premises and in some parades. The trouble with that argument is that Schottler knew and concealed the fact that there were two other corporate owners that would be using the fire truck for personal and promotional purposes.

Centennial contends there can be no misrepresentation because Transamerica made no inquiry into the ownership of the fire truck. "The general rule is that absent fraud an applicant's failure to disclose facts about which no questions were asked will not avoid the policy." *National Aviation Underwriters, Inc. v. Fischer*, 386 F.2d 582, 584 (8th Cir.1967).

Schottler did not volunteer the information of multiple ownership and there was conflicting testimony whether the agent had asked him about such ownership. Since the testimony is conflicting, it was within the trial court's discretion to determine the truth of the matter. The trial court chose to believe Schottler was asked about ownership and misrepresented that AFC was the sole owner.

C. *Application of Minn.Stat. § 65B.49, subd. 3(3)(a) (1982).*

Centennial asserts Transamerica cannot deny liability coverage after injury or damage by reason of Minn.Stat. § 65B.49, subd. 3(3)(a) (1982) which provides:

Every plan of reparation security shall be subject to the following provisions which need not be contained therein:

(a) The liability of the reparation obligor with respect to the residual liability coverage required by this clause shall become absolute whenever injury or damage occurs; such liability may not be cancelled or annulled by any agreement between the reparation obligor and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.

*Id.* Centennial is correct if the law were applied between insureds and insurers. But section 65B.49 can only be invoked for the benefit of accident victims and not for other insurance companies seeking to avoid their contractual liabilities. *See Leppla v. American Family Ins. Group*, 306 Minn. 478, 483, 238 N.W.2d 592, 595 (1976).

In *Nimeth v. Felling*, 282 Minn. 460, 165 N.W.2d 237 (1969), the Minnesota Supreme Court construed the Safety Responsibility Act, Minn.Stat. § 170.40, subd. 6(1), the predecessor of Minn.Stat. § 65B.49, as follows:

There seems to be ample authority to the effect that the insurer on a compulsory insurance liability policy may be held liable to one injured by the insured notwithstanding the fact that the insured himself has lost his rights under the policy by failure to comply with its terms and conditions. The rights of the injured person are independent of and are not derived from those of the insured.

We agree with the trial court that the failure of the insured to report the fact that he had replaced the automobile described in the policy could not operate to defeat the claim of the injured third party. Section 170.40, subd. 6(1), makes it clear that the liability of the insurer becomes absolute when the damage or injury occurs and that no violation of the policy "shall defeat or void said policy."

*Nimeth*, 282 Minn. at 463, 165 N.W.2d at 239 (citations omitted). In *Nimeth*, the statute was not applied so as to defeat the claims of injured third parties. *Id.*

When the Kolas family was compensated, the purpose of the applicable insurance law was satisfied. Once the injured party was compensated, the question of which insurance company should ultimately bear the burden of loss had to be resolved according to the terms of the insurance policies involved. *Leppla*, 306 Minn. at 485, 238 N.W.2d at 596. Since section 60A.08, allowing policy avoidance on mis-

representation that increased the risk of loss, is statutorily inserted into every contract of insurance, once Transamerica satisfied the trial court of such misrepresentation, it did not have to bear the burden of loss.

## II

## WHICH POLICIES WERE PRIMARY AND WHICH WERE SECONDARY?

Now it must be determined how the two remaining policies of Western and Centennial will be treated.

■ In determining priority coverage, a court must first look to the "other insurance" clauses of the policies to determine if they are in conflict. *Integrity Mutual Ins. Co. v. State Automobile & Casualty Underwriters Ins. Co.*, 307 Minn. 173, 174–75, 239 N.W.2d 445, 446 (1976).

The Centennial policy names WAD as its insured. It contains a "permissive user clause" which provides that "[a]nyone else is an *insured* while using with *your* permission a covered *auto you* own...." Scherer was using the fire truck at the time of the accident with the permission of WAD. Scherer therefore becomes a named insured under the policy.

The policy then provides "primary insurance" for any auto owned except when "two or more policies cover on the same basis, either excess or primary." In such situations, the policy contains a pro rata clause which restricts liability to the proportion that the limit of the policy bears to the total applicable limits of all policies covering on the same basis.

The Western policy provides indemnity for Art Scherer, the named insured, as the driver of any non-owned vehicle. This coverage is limited by an excess clause which provides that if other insurance is available to the insured, coverage under the policy "shall be excess insurance over any other valid and collectible insurance."

In summary, the Western policy provides excess coverage, whereas the Centennial policy is primary, except when another policy covers "on the same basis." The trial court held that the Centennial and Western policies do not conflict.

■ Because the "other insurance" clauses of the two policies are arguably in conflict, the order of priority for payment must be determined by ascertaining which policy is closest to the risk. *Id.* at 175–76, 239 N.W.2d at 447; *Federated Mutual Ins. Co. v. American Family Mutual Ins. Co.*, 350 N.W.2d 425, at 427 (Minn.Ct.App.1984). "It must [be] determine[d] which policy had the primary purpose of insuring for the risk that occurred, and which policy was the more incidental." *Id.* at 427. This is known as the "closeness to the risk" test. In applying this test, the supreme court has set forth several factors to be considered:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Ins. Co. v. Northstar Mutual Ins. Co.*, 281 N.W.2d 700, 704 (Minn. 1979).

■ The Centennial policy covered the "accident-causing instrumentality," namely, the fire truck. Western's policy, on the other hand, insured Scherer individually and only incidentally insured the fire truck. In *Federated Mutual*, this court held that the insurer of the "accident-causing instrumentality" was closer to the risk than the insurer of the driver and was, therefore, primarily liable. *Federated Mutual*, at 427; *see also Federal Ins. Co. v. Prestemon*, 278 Minn. 218, 231–32, 153 N.W.2d 429, 438 (1967) (insurer of accident-involved vehicle was the primary insurer and the insurer of the driver was an excess insurer). Since Western insured only the driver (Scherer) and not the fire truck, its coverage was not closest to the risk. The trial

court correctly held that Western's policy provided secondary coverage.

## DECISION

The Transamerica policy was voided due to the misrepresentations by its insured. Since the Centennial policy covers the "accident-causing instrumentality," it is closer to the risk and Centennial is therefore primarily liable.

Affirmed.