WILLIAM G. BARTH, JR., AND OTHERS v. JACK P. NITKE.
AMERICAN RELIABLE INSURANCE COMPANY OF MINNESOTA, GARNISHEE.

126 N. W. (2d) 452.

February 21, 1964—No. 38,983.

*Carlsen, Greiner & Law,* for appellant.
*Hoppe & Kennedy* and *Robert J. Healy,* for respondents.

OTIS, JUSTICE.

This is an action against a garnishee liability carrier, American Reliable Insurance Company of Minnesota, arising out of default judgments for $20,750 obtained in the United States District Court for the Northern District of Illinois against defendant, Jack P. Nitke, a driver involved in a collision with plaintiffs in Illinois. Special verdicts and findings were entered in favor of plaintiffs, and this appeal is from an order denying the garnishee's motion for amended findings or a new trial.

The principal issues are, first, whether the Illinois court obtained jurisdiction over defendant; second, whether the evidence permits a finding that the insured, Marian Nitke, was the sole owner of the vehicle driven by defendant; and, third, whether the insured misrep-

resented to the garnishee material facts which increased the company's risk of loss.

Defendant, Jack Nitke, and his wife Marian, the insured, were residents of Minneapolis from the time of their marriage in 1943 until shortly before this accident on December 4, 1954. In 1950 they purchased a 1950 DeSoto which was registered in defendant's name. This car and others owned by the Nitkes were insured by the garnishee and its predecessor through an independent agent, one Rex Pickett, from 1948 to 1955. In 1951 Nitke's automobile was transferred to Marian because of marital difficulties which they were then experiencing. Sometime in the late summer or early fall of 1953, Marian paid off the balance due on the purchase price, amounting to approximately $600, and at the same time notified the garnishee that she was thereafter to be the named insured and owner of the car because her husband would no longer be driving it. The Nitkes were not then living together. Defendant was in financial trouble in the hardware business which resulted in his bankruptcy. In addition, he was having a personal drinking problem and was confined at a Milwaukee veterans' hospital for a period of 2 or 3 months.

In November 1953 the Nitkes were temporarily reconciled and remained together until sometime in August 1954. During this interval Marian traded the 1950 DeSoto for a 1952 DeSoto which was registered, insured, and financed by her in her name. The policy of insurance which was in effect at the time of the accident was renewed for the period from August 29, 1954, to August 29, 1955.

The final separation of the Nitkes occurred in August 1954, when defendant took possession of the car, assumed all of the payments, and used it to the exclusion of his wife, who had meanwhile secured a Crosley for her own transportation. At this time defendant moved from 2247 Kentucky Avenue to a residence at 2249 Blaisdell in the city of Minneapolis. With Marian's knowledge and consent, defendant was en route to Florida to visit his mother and possibly to sell the car when on December 4, 1954, he collided in Illinois with a car operated by plaintiff Margaret F. Barth in which plaintiff Eleanor Mangold was a passenger.

Defendant had notice of these claims on December 7, 1954, as a result of an interview with plaintiffs' attorney. By December 9 the garnishee was aware of the accident since it denied coverage and entered a nonwaiver agreement with defendant on that date. In January, February, and April 1955, counsel for plaintiffs and for the garnishee were communicating with one another about the impending litigation.

The original action was sued by the plaintiffs against defendant in the United States District Court for the Northern District of Illinois on June 20, 1955. Service on defendant was made under an Illinois statute conferring jurisdiction over nonresident automobile operators by service on the secretary of state and by mailing process to the defendant at his last known address. Default judgments were entered on November 29, 1955, on the basis of which, judgments against defendant were secured in Minnesota on November 19, 1959. The garnishee first had notice of the judgments in 1957.[1]

Garnishment proceedings against the liability carrier resulted in a disclosure that nothing was due defendant. Plaintiffs thereupon petitioned the court for leave to file a supplemental complaint against the garnishee which was granted pursuant to Minn. St. 571.51. Those proceedings are here for review.

■ Under Illinois law it is necessary that there be strict compliance with the statute[2] authorizing service on nonresident motorists, Romp-

---

[1]The record strongly suggests that for tactical reasons neither of the parties wished to bring matters to a head too quickly, the plaintiffs hoping by the delay to strengthen their case against opening the defaults, while the garnishee preferred to let the statute of limitations run against plaintiffs before challenging jurisdiction or moving to vacate the judgments while garnishee still had time to do so. Forsberg v. Harris, 27 Ill. App. (2d) 159, 175, 169 N. E. (2d) 388, 395.

[2]Ill. Rev. Stat. 1963, c. 95½, § 9-301(a): "The use and operation by any person or his duly authorized agent or employee of a motor vehicle or motorcycle over or upon the highways of the State of Illinois, shall be deemed an appointment by such person of the Secretary of State to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, and said use or operation shall be

za v. Lucas, 337 Ill. App. 106, 85 N. E. (2d) 467,[3] and that question is to be determined by reference to the sufficiency of the affidavit signed by plaintiffs' attorney, which in this case was as follows:

"I, Ezra L. D'Isa, being first duly sworn on oath depose and say that I am duly licensed attorney in the State of Illinois, and one of the attorneys for the plaintiff in the above-entitled cause; that I caused Jack P. Nitke, defendant herein, to be served as non-resident defendant by full compliance with Illinois Revised Statutes 1953, Chapter 95½, Section 23, and that service of summons was had on Charles F. Carpentier, Secretary of the State of Illinois, on the 15th day of June, 1955. Statutory notice of service was sent to defendant's last known address on the 17th day of June, 1955, with copy of summons and copy of this Affidavit, by registered United States Mail.

"Further affiant sayeth not.

"/s/ Ezra L. D'Isa"

The garnishee asserts the following defects in the affidavit:[4]

"1. The Affidavit of Service does not appear to be attached to the Summons.

"2. The Affidavit of Service does not identify the Summons that was alleged to be served upon the Secretary of State.

"3. The Affidavit of Service does not identify the Summons that was sent to defendant's last known address.

---

signification of his agreement that any such process against him which is so served, shall be of the same legal force and validity as though served upon him personally if such person is a non-resident of this State or at the time a cause of action arises is a resident of this State but subsequently becomes a non-resident of this State, or in the event said motor vehicle or motorcycle is owned by a non-resident and is being operated over and upon the highways of this State with said owners express or implied permission."

The statute in effect when the actions in Illinois were instituted, Ill. Rev. Stat. 1953, c. 95½, § 23, was substantially the same.

[3]See, also, Hurley v. Finley, 6 Ill. App. (2d) 23, 28, 126 N. E. (2d) 513, 516; Schilling v. Odlebak, 177 Minn. 90, 94, 224 N. W. 694, 696.

[4]The garnishee's standing to challenge jurisdiction over defendant is unquestioned. Spotts v. Beebe, 148 Minn. 363, 182 N. W. 167.

"4. The Affidavit does not allege that Jack P. Nitke was a non-resident. It merely states that he was served as a non-resident.

"5. The Affidavit of Service does not allege that notice was sent to defendant, but merely states that notice was sent to defendant's last known address.

"6. The Affidavit of Service does not allege that the action arose out of an automobile accident."

With two exceptions we regard the garnishee's objections as trivial and unsupported by authority. The Rompza case held that because the affidavit of compliance neglected to recite that defendants were non-residents *at the time of the accident,* the court lacked jurisdiction. However, by a 1949 amendment, the statute now expressly provides that service by mail can be obtained on a driver if he was a non-resident *at the time suit was begun.* The Rompza case, therefore, is no longer authority for finding a jurisdictional defect with respect to that recitation.

The only other objection deserving comment is whether or not service was fatally defective because notice of the Illinois action was sent to a nonexistent Minnesota address where patently defendant could not have lived. The record discloses that an investigator for plaintiffs' counsel interviewed defendant while he was hospitalized in Illinois. The investigator testified that defendant stated his Minneapolis address was 2249 Brook Terrace. The defendant on the other hand denies he gave that address. A special verdict was submitted to the jury on this issue, which was answered as follows:

"Q. #1. On about December 7, 1954, did Mr. Nitke state to Mr. Paul Stowick that his address was 2249 Brook Terrace, Minneapolis, Minn.?
"A. Yes."

We hold that the evidence was sufficient to support the verdict and the court's finding which adopted it. The garnishee, nevertheless, contends that plaintiffs knew the notice sent to defendant had been returned to plaintiffs' counsel with the notations "Moved—no order," "2247 Kentucky Avenue" and showed 2249 Brook Terrace to be a

fictitious address. In addition, appellant asserts that the defendant's mother's address in Florida was available through police files, and that plaintiffs had a duty to pursue the matter and make further efforts to furnish defendant with actual notice. We find no merit in this contention. The statute does not require that notice be sent to defendant's *actual residence* but only to his "last known address." Ill. Rev. Stat. 1963, c. 95½, § 9-301(b).[5] All that is required is that plaintiff comply in good faith, based on the best information he has been able to secure.[6] The law does not impose on plaintiff an obligation to track down defendant if the address used was furnished by the defendant himself.[7] We therefore hold that the Illinois court had jurisdiction to enter the judgment on which this action is based.

■ A second interrogatory submitted to the jury was answered in the following fashion:

"Q. #2. On December 4, 1954, was Marian Larson, formerly Marian Nitke, the sole owner of the DeSoto Automobile?

"A. Yes."

The garnishee asserts that the record does not support such a finding and that if defendant was a part owner who was not a named insured he was not covered under Marian's policy. There is evidence that the car previously owned by the parties was transferred to Marian in 1951 and that she paid a substantial amount of the balance of the purchase price. She was employed during this time and applied her own earnings on payments for the car involved in this accident. In addition, she secured and paid for the liability insurance until August 1954. While it is true that during some of this period she used a Crosley for her own transportation, that fact is not necessarily inconsistent with her retaining sole ownership of the car involved in the accident. Following the final separation of the parties in August 1954, defendant acquired the exclusive use and possession of the DeSoto

[5]Hendershot v. Ferkel, 144 Ohio St. 112, 56 N. E. (2d) 205; State ex rel. Nelson v. Grimm, 219 Wis. 630, 635, 263 N. W. (2d) 583, 586, 102 A. L. R. 220, 223.

[6]Sorenson v. Stowers, 251 Wis. 398, 402, 29 N. W. (2d) 512, 514.

[7]Skinner v. Mueller, 1 Wis. (2d) 328, 84 N. W. (2d) 71.

for his own personal and business purposes and made payments on it. However, use in itself is not conclusive of the question of title. State v. One Buick Sedan Automobile, 216 Minn. 129, 134, 12 N. W. (2d) 1, 4. The fact of registration in Marian's name is prima facie evidence of her exclusive title.[8] She not only had a substantial financial interest in the car but exercised control over it until the time she relinquished possession to the defendant in the summer of 1954. In the absence of any testimony of a mutual intent to convey part ownership, we are of the opinion that the transfer of possession and assumption of payments do not here compel a holding that a joint title was created.

■ Finally, it is the contention of the garnishee that the statement Marian made to her liability carrier in the summer of 1953, advising them that the 1950 DeSoto had been transferred to her and defendant would no longer be driving it, was a fraudulent misrepresentation which increased the risk of loss within the meaning of Minn. St. 60.85, which provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

Again, the jury considered this issue and brought in the following special verdict:

"Q. #5. Did Mrs. Larson, formerly Mrs. Nitke, misrepresent the use of the DeSoto resulting in an increased risk to the garnishee Insurance Company?

"A. No."

Garnishee takes the position that the evidence is conclusive against plaintiffs on this question and compels a finding that Marian's statement to it was for the purpose of avoiding a cancellation of the policy which would have resulted had the liability carrier known of defendant's bankruptcy and his drinking problems. We cannot subscribe to

---

[8]Frye v. Anderson, 248 Minn. 478, 491, 80 N. W. (2d) 593, 602.

this view. The inference is equally plausible that because Marian was separated from her husband when this statement was made to the liability carrier, she then had every intention of retaining the car permanently. However, garnishee asserts that the law imposes a continuing obligation to keep an insurance carrier informed of changing circumstances.[9]

Under the law of this state, representations as to future conduct made in good faith do not ordinarily support a claim of fraud within the meaning of the statute. Nielsen v. Mutual Service Cas. Ins. Co. 243 Minn. 246, 250, 67 N. W. (2d) 457, 460. No authority is cited for the contention that once a policy is issued an insured must keep his liability carrier apprised of every change in circumstances which might conceivably affect the risk of loss for a period of time.[10] This is a matter which could well be covered by express agreement between the parties but which has not been included in the contract which governs this decision. In the absence of such an agreement and in a situation where parties do not enjoy any particular fiduciary relationship, we find no compelling reason for holding that a change in possession or use of the kind which here took place entitles the liability carrier to notice as a matter of law. We therefore hold that the jury's verdict and the findings on which it was based are supported by the evidence.

Affirmed.

---

[9]It may be of some significance on the question of notice that defendant himself drove the car to the home of the insurance agent, Rex Pickett, and personally paid the 1954 premium.

[10]For a change in risk after application but before delivery, see Ames v. New York Life Ins. Co. 154 Minn. 111, 191 N. W. 274. Cf. Prosser, Torts (2 ed.) § 87, p. 534; Restatement, Torts, § 551; Stevens v. Marco, 147 Cal. App. (2d) 357, 379, 305 P. (2d) 669, 682. See, also, Annotation, 33 A. L. R. (2d) 948.