PREFERRED RISK MUTUAL INSURANCE COMPANY v.
HARVEY ANDERSON AND OTHERS.

152 N. W. (2d) 476.

August 4, 1967—No. 40,236.

*Karlins, Grossman, Karlins, Siegel & Brill, Sheldon D. Karlins,* and *Thomas V. Firth,* for appellant.

*James A. Fridland,* for respondent Harvey Anderson.

*Chester G. W. Gustafson,* for respondents E. W. Fall and Elaine Fall.

*King, MacGregor & Lommen* and *Maurice H. Rieke,* for respondent Jerome Gregorson.

ROGOSHESKE, JUSTICE.

On November 18, 1964, the Preferred Risk Mutual Insurance Company instituted a declaratory judgment action to have an auto insurance policy, issued to defendant Rev. Harvey Anderson in July 1962, rescinded because of alleged misrepresentations in the application for the policy. After a trial by the court, judgment dismissing the complaint was entered. This appeal is from that judgment.

The action was based upon Minn. St. 60.85, which provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

In construing this statute, we held in Nielsen v. Mutual Service Cas. Ins. Co. 243 Minn. 246, 249, 67 N. W. (2d) 457, 459, that—

" \* \* \* a material misrepresentation, made with intent to deceive and defraud, avoids the policy. A material misrepresentation, not made with intent to deceive or defraud, does not avoid the policy, unless by the misrepresentation the risk of loss is increased. If a material misrepresentation increases the risk of loss the policy is avoided, regardless of the intent with which it was made."

The determinative issue is whether there was sufficient evidence to support the findings of the trial court that none of the alleged misrepresentations were made with an intent to deceive and defraud, they were not, in fact, false, and they did not increase the risk of loss.[1]

It is well established that a trial court's findings of fact will not be disturbed on appeal, even though we might not agree with them, unless they are clearly erroneous in the sense that they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole.[2]

Viewing the evidence [3] most favorably to uphold the findings, the trial court could have reasonably found the following facts: Defendant E. W. Fall is the brother-in-law of defendant Anderson. In October 1961 defendant Fall was in an accident. Prior to the accident and unknown to

---

[1] There is no merit to plaintiff's contention that the trial court made no finding as to whether any alleged misrepresentation made by the insured increased the risk of loss. The trial court found "[t]hat the application and declarations of the insured were not false and fraudulent as to content or nature so as to entitle the plaintiff to rescind said policy of insurance." Since plaintiff made no motion for amended findings and makes this claim for the first time on appeal, we believe the findings can reasonably be construed in the light of the pleadings and the record to comprehend the ultimate facts essential to support the judgment ordered.

[2] Rule 52.01, Rules of Civil Procedure.

[3] Defendants presented very little direct evidence, relying principally on rather brief redirect examination following plaintiff's cross-examination of defendants Anderson and Fall under the rules and more extensive cross-examination of the manager of plaintiff's underwriting department. There are indications that some of the gaps in the record as to the background details were developed in pretrial discovery. Obviously, this procedure requires a reviewing court in determining the sufficiency of the evidence to place heavy reliance upon the trial judge's judgment of credibility of the witnesses whose testimonial demeanor he alone judicially observed.

him, his liability insurance had been canceled because of nonpayment of a premium. As a result of this accident, a judgment was obtained against him and his driver's license was suspended until about November 1962 because of his failure to supply the required proof of his financial responsibility. His only auto was levied upon and sold in December 1961. Defendant Fall had a family of five to support and was in serious financial difficulty. Although it is not clear from the record, he apparently needed an automobile in his work, generally referred to as selling real estate and some products to farmers, operating a rubber stamp factory, and serving as a clergyman, all carried on part-time at various unspecified times.

In July 1962 defendant Anderson, a full-time clergyman residing in Verndale, purchased a Chevrolet automobile. Seeking to aid his brother-in-law and his family, he loaned the vehicle to them. It was anticipated that their use would be temporary as the Anderson family could use another automobile. Defendant Anderson paid for the vehicle by trading in his old Studebaker, primarily used by his son, and paying $400 in cash. The title to the Chevrolet was registered in his name. For reasons not developed at trial, Mr. Fall gave Mr. Anderson a note for $400, on which two payments of $20 each, at some undisclosed time, may have been made. The Chevrolet was left in the possession of the Fall family in Albert Lea, some 250 miles from Verndale.

In July 1962, defendant Anderson, to secure insurance for the Chevrolet, executed and mailed the following form to plaintiff insurance company:

"NAME   HARVEY A. ANDERSON                          Age 57
ADDRESS   BOX 144
CITY   VERNDALE                          STATE   MINN.
                                         NO OF CARS
OCCUPATION   MINISTER                    IN HOUSEHOLD?        3

| D R I V E R S | CIRCLE OWNER OF THIS CAR   SELF   X | PRINCIPAL DRIVER | OTHER DRIVERS 1.   2.   3. |
|---|---|---|---|
| | AGE?   57 | | |
| | SEX?   M & F | | |
| | MARRIED?   YES | | |

| | | | | |
|---|---|---|---|---|
| **A** **U** **T** **O** **M** **O** **B** **I** **L** **E** | MAKE CHEVROLET | YEAR '55 | No. | |
| | | | CYL. 8 | |
| | MODEL C55J003208 (Series) | BODY TYPE 4 DOOR | | |
| | DATE OF PURCHASE 7/5/62 ☐ NEW - ☒ USED | | | |
| | U ☒ PLEASURE ☐ FREQUENT BUSINESS USE | | | |
| | S | | | |
| | E ☐ TO AND FROM WORK MILES, ONE WAY | | | |

MY PRESENT AUTO INSURANCE EXPIRES
MONTH x DAY x YEAR x"

This form was accompanied by a letter, which requested:

"Until further notice, please include the following automobile with my present insurance (Policy #222-444): (See enclosed application card)
1955 Chevrolet, Bel-Aire
8 cylinder, 4 door sedan
Serial number C55J003208.

"Coverage should include liability A and B 25, 50 and 10 thousand (As my other policy) and E, Collision (Value $400) with 100 deductible. Effective immediately.

"Very truly yours,
/s/ Harvey A. Anderson
"P. S. There will be no drivers under 51 years of age. I am the owner.
"/s/ H. A. A."

This form was styled a "recommendation card" and was not an application, but designed to be used in recommending new applicants for insurance, plaintiff specializing in writing policies for "nondrinking" drivers at reduced premium rates. Plaintiff merely added the Chevrolet to the coverage of the existing policies on the basis of the form and letter submitted, without requiring further application. Defendant Anderson was thereafter notified of coverage by way of a "declarations sheet" made a part of the policy and declaring, among other things, that the Chevrolet would be used for pleasure and business, that it

would be principally used and garaged in Verndale, and that no member of Anderson's household had had his insurance canceled within the last 3 years or ever had his driver's license revoked. The insurance policy was continuously kept in Anderson's name and paid for by him.

The Chevrolet remained in defendant Fall's possession and was used primarily by him until July 18, 1963, when it was demolished in a storm. Mr. Anderson submitted a claim to plaintiff and in a detailed letter reported the loss as well as the fact that the Chevrolet at the time of its destruction was being used by his brother-in-law, Fall, in Albert Lea. Thereupon he used $100 he received in settlement from plaintiff, $75 realized from salvage of the Chevrolet, and $195 contributed by another brother-in-law of Fall's to purchase a Pontiac to replace the Chevrolet. The Pontiac was registered in Mr. Anderson's name, and plaintiff substituted it for the Chevrolet on the insurance policy.

The Pontiac was kept by defendant Fall in Albert Lea until February 1964, when he and his family moved to Minneapolis, where he continued to use the Pontiac in his employment as a real estate salesman. On September 12, 1964, defendant Fall was involved in an accident while driving his daughter's friend home. At this time his driver's license was no longer suspended. Two weeks previously Rev. Anderson had had his first and only face-to-face meeting with an agent representing plaintiff. During their half-hour conference, they discussed plaintiff's records concerning the coverage and location of the 3 vehicles and added medical and uninsured motorist coverage to the family Rambler. On being told that defendant Fall had the Pontiac in Minneapolis, the agent said that was all right.

Whether as a matter of law the evidence required granting rescission, as plaintiff urges, must be considered in the light of the rule that the burden of proof on all issues of fact relevant to the alleged misrepresentation is on the insurer.[4] Moreover, the question whether there was a misrepresentation must be decided in relation to the facts in existence at the time the representations were made and not to the facts later

[4] Nielsen v. Mutual Service Cas. Ins. Co. 243 Minn. 246, 67 N. W. (2d) 457.

developed.[5] Absent an express agreement, the insured is under no obligation to inform the insurer of future developments inconsistent with his prior declarations.[6]

Although plaintiff does not argue the point in its brief, the complaint alleged that the claimed misrepresentations were made by defendant Anderson with intent to deceive and defraud. The trial court found no such intent, and there is ample evidence in the record to support this conclusion.[7]

Plaintiff contends there was a misrepresentation as a matter of law when defendant Anderson stated he was the "owner" of the Chevrolet in the letter accompanying his application for insurance. Plaintiff claims defendant Fall was the "owner," relying upon the following facts: The Chevrolet was purchased so it could be used by defendant Fall; he used it almost exclusively from the time of its purchase and kept it in his possession about 250 miles from where defendant Anderson lived; and defendant Fall signed a $400 note when he obtained possession and made payments thereon. On the other hand, the evidence considered as a whole reasonably supports a finding that defendant Anderson was the owner of the Chevrolet. He paid the entire purchase price; he held the legal title in his name and neither intended nor attempted to transfer title to his brother-in-law; he secured and paid for insurance coverage, sold the Chevrolet when it was demolished, and negotiated and settled the insurance claim; he retained ultimate control as to who could use the vehicle, had use for it by his family, and intended to make no disposition of it except to permit defendant Fall to use it temporarily.

---

[5] See, Nielsen v. Mutual Service Cas. Ins. Co. *supra;* 12 Appleman, Insurance Law and Practice, § 7309.

[6] Barth v. Nitke, 267 Minn. 331, 126 N. W. (2d) 452.

[7] The significant evidence tending to negate an intent to deceive was Mr. Anderson's denial of having such an intent; his explanation of why he made the representations in question; the fact he was inexperienced in insurance matters; his disclosure to plaintiff in July 1963 that the Chevrolet had been used in Albert Lea by Fall; and his voluntary disclosure to plaintiff's agent in September 1964 that Fall was using the Pontiac in Minneapolis. Of course, the evidence is certainly not conclusive, and the trial court could have justifiably decided this issue the other way.

We fail to see how statutory rules for determining ownership under the Safety Responsibility Act [8] and the registration of motor vehicles [9] have any application, because in determining whether a misrepresentation has been made, the words used should normally be considered in terms of their ordinary meaning in everyday parlance and not in their technical, legal sense.[10] Moreover, a rescission of an automobile liability policy has public implications under these circumstances, and if the representation in question is reasonably susceptible of being interpreted in a manner so as not to be false, such an interpretation should be adopted.[11]

The finding implicit in the court's decision that defendant Anderson did not misrepresent that he was the owner is sustained by the evidence.[12]

Plaintiff claims the risk of loss was increased because it was misrepresented that the Chevrolet was to be used only for pleasure. Assuming this to be a misrepresentation, it cannot be regarded as material, for plaintiff neither relied upon it nor suffered detriment thereby.[13] It is undisputed that plaintiff of its own accord issued a policy extending coverage for both pleasure and business uses.

Plaintiff next argues that there was a misrepresentation that the vehicle was to be principally garaged in Verndale, when in fact it was garaged first in Albert Lea and then in Minneapolis. However, plaintiff has failed to establish as a matter of law that this alleged misrepresentation increased the risk of loss. The trial court could reasonably find that defendant Anderson, when he made the alleged misrepresentation in July 1962, did not realize that in February 1964 Fall would move to and

---

[8] Minn. St. 170.21, subd. 9.

[9] Minn. St. 168.011, subd. 5.

[10] See, Teixeira v. Globe Ind. Co. (9 Cir.) 349 F. (2d) 502; Oil Base, Inc. v. Transport Ind. Co. 143 Cal. App. (2d) 453, 299 P. (2d) 952; Merchants Ind. Corp. v. Eggleston, 37 N. J. 114, 179 A. (2d) 505.

[11] See, Olinger Mutual Benefit Assn. v. Christy, 139 Colo. 425, 342 P. (2d) 1000; 7 Couch, Insurance (2 ed.) § 35.145.

[12] See, e. g., Barth v. Nitke, *supra;* Nielsen v. Mutual Service Cas. Ins. Co. *supra;* Milbank Mutual Ins. Co. v. Wentz (8 Cir.) 352 F. (2d) 592; Calhoun v. Farm Bureau Mutual Ins. Co. 255 Iowa 1375, 125 N. W. (2d) 121.

[13] See, 12 Appleman, Insurance Law and Practice, § 7296.

continue to use the vehicle in Minneapolis. Since he was under no legal obligation to inform insurer of this fact, the controlling question becomes whether the fact that the Chevrolet was kept in Albert Lea rather than Verndale increased the risk of loss. Plaintiff submitted no evidence on this point.

Plaintiff also argues that because of Fall's driving record there was a misrepresentation when the "declarations" mailed by plaintiff to Anderson stated that no member of Anderson's household had his insurance revoked or canceled or his license suspended. Since Fall was not a member of Anderson's household, this declaration was true. The language of the declaration was chosen by plaintiff and if it had desired the declaration to cover all known users or principal users of the car, it should have used language appropriate to this end.[14]

Plaintiff's most persuasive argument is that Anderson misrepresented that he and his wife were to be the principal drivers of the vehicle insured. While the evidence does permit a finding that Fall's use was to be only temporary, it is stretching credulity to accept that this representation made by defendant Anderson did not conceal the true facts as to the principal driver and use of the Chevrolet. The proof, however, falls far short of compelling a finding as a matter of law that Fall's use of the vehicle increased the risk of loss.

In this context, the concept "risk of loss" refers to the likelihood of the future liability of the insurance company for loss caused by the negligent operation and use of a motor vehicle by the insured. Other than the inferences which could be drawn from defendant Fall's prior accident, the resulting judgment, his failure to pay premiums, and the suspension of his driver's license for about 13 months, the only other evidence submitted by plaintiff was the testimony of its underwriting manager. The sum of his testimony was his opinion in response to hypothetical questions that had the company known of defendant Fall's accident, driver's license suspension, and especially that he may have been driving during suspension, it would not have issued the policy. There was no evidence that this opinion corresponded with an industry-wide

---

[14] See, Erickson v. Allstate Ins. Co. (N. D. Cal.) 126 F. Supp. 100.

view, nor was any evidence submitted of defendant Fall's complete driving record or the driving record of the Anderson's family, so as to provide a basis for comparison. Proof of one instance of negligent driving, a failure to maintain liability insurance, and a suspension of a driver's license by reason thereof hardly seems sufficient to compel a conclusion that defendant Fall's use of the vehicle at the time the misrepresentation was made increased the risk of loss.[15] Bearing in mind that the burden of proof rested upon plaintiff, and that, as noted,[16] the determination of this critical fact issue turned largely upon the credibility of the cross-examination testimony of defendants Anderson and Fall, and the weight to be given opinion evidence, we are not prepared to overturn the conclusion of the trial court that the risk of loss was not increased, even though the evidence upon a reading of this record might appear to preponderate in favor of granting rescission.

Affirmed.

---

[15] See, Nielsen v. Mutual Service Cas. Ins. Co. *supra.*
[16] See footnote 3, *supra.*