**PROPRIETORS INSURANCE COMPA-NY and Minnesota Insurance Guaranty Association, Appellants,**

v.

**NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, Executor of the Estate of M. James Trask, and Bette Trask, Trustee for the Next of Kin of Mary Beth Trask and Ann Trask, Respondents.**

No. C3–85–707.

Court of Appeals of Minnesota.

Oct. 1, 1985.

Robert G. Haugen, Minneapolis, for appellants.

Paul F. Seltz, St. Paul, for Northwestern Nat. Bank of Minneapolis.

Michael J. Healey, St. Paul, for Bette Trask.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

This is a declaratory judgment action by appellants Minnesota Insurance Guaranty Association and Proprietors Insurance Company to determine whether a policy of aircraft hull and liability insurance issued by Proprietors provided coverage for an airplane accident in which James Trask, one of the named insureds, and his two teenage daughters were killed. Respondents moved for summary judgment.

The trial court held that the policy was not voided by alleged material misrepresentations under Minn.Stat. § 60A.08, subd. 9 (1980) because the alleged misrepresentations were neither made by the insured with the intent to deceive and defraud nor were they of a type that increased the risk of loss. The trial court further held that Minn.Stat. § 60A.081, subd. 1 (1980), which permitted specific policy exclusions and conditions, was inapplicable and that defendants were entitled to attorneys' fees. The trial court granted respondents' motion for summary judgment and Proprietors appeal. We affirm.

## FACTS

James Trask applied to Proprietors for aircraft hull and liability insurance to cover his airplane. The application required the number of pilot hours logged for each individual who would fly the plane. Trask represented a total of 1,200 logged pilot hours, which included 1,000 hours in a plane with retractable landing gear, although his log book later revealed only 871.1 flying hours, which Bette Trask accepted as a total for purposes of the summary judgment motion. Kirk Otto was also listed as a pilot with a total of 300 logged pilot hours, which included forty-six hours in a plane with retractable landing gear and twenty-five hours in the aircraft model to be insured.

Proprietors' underwriter approved Trask's application and issued an aircraft and liability insurance policy effective June 5, 1981, listing both Trask and Otto as the named insureds. The declaration page of the policy provided:

Item 7. PILOTS: The coverage afforded by this policy shall not apply while the aircraft is operated in flight by other than the following pilots who hold a current and valid medical certificate from the Federal Aviation Agency and who are properly certified for the flight involved: See Endorsement No. 1.

Endorsement No. 1, the "approved pilots endorsement," in turn, specified the named individuals who would be allowed to fly the plane with the insurance policy in full effect, and provided that:

It is hereby understood and agreed that the coverage afforded by this policy shall

not apply while the aircraft is operated in flight by other than the following pilots who hold a current and valid medical certificate from the Federal Aviation Agency and who are properly certified for the flight involved:

M. James Trask, provided he has a certificate from the Federal Aviation Administration designating him a Private Pilot with a minimum of 1,200 total logged flying hours of which not less than 1,000 hours shall have been in aircraft equipped with retractable landing gear and has received a check out in the make and model aircraft involved; otherwise, Kirk Otto, Jr., provided he has a certificate from the Federal Aviation Administration designating him a Private Pilot with a minimum of 300 total logged flying hours of which not less than 46 hours shall have been in aircraft equipped with retractable landing gear including at least 25 hours in the make and model aircraft involved.

Approximately one week after the policy was issued, Trask completed a "pilot record," indicating that "to the best of [his] knowledge and belief" he had 1,215 total flying hours.

Two months later, on August 20, 1981, while attempting to land, Trask crashed the plane and he and his two daughters died.

Appellant, Minnesota Insurance Guaranty Association (MIGA), which has managed Proprietors' claim since Proprietors went into receivership shortly after the. fatal crash, instituted this declaratory judgment action on the issue of policy coverage. MIGA and Proprietors claimed Trask did not have the required 1,200 hours of total logged flying hours, which was a condition precedent to coverage.

The trial court determined that a statute permitting insurance carriers to condition coverage on certain levels of pilot experience was inapplicable and that MIGA and Proprietors must show Trask intended to deceive and defraud by misrepresenting his flying hours in order to deny coverage. In the alternative, the trial court stated that Proprietors must show that the discrepancy between Trask's actual logged flying hours and the logged flying hours stated on the application increased the risk of loss.

Bette Trask, as trustee for the next-of-kin of her husband and Northwestern National Bank of Minneapolis, as executor of Trask's estate, moved for summary judgment on the coverage question. The trial court found that MIGA and Proprietors did not raise a fact issue as to a material misrepresentation, and granted summary judgment. The trial court also awarded attorneys' fees to Bette Trask and the executor. MIGA and Proprietors appeal.

## ISSUES

1. Whether Endorsement No. 1 contains a valid condition of coverage requiring 1,200 hours of pilot experience as permitted by Minn.Stat. § 60A.081, subd. 1?

2. Whether the aircraft insurance policy issued by Proprietors was voided due to alleged misrepresentations by the insured, James Trask, under Minn.Stat. § 60A.08, subd. 9?

3. Whether Bette Trask, trustee for the next of kin, and Northwestern National Bank of Minneapolis, executor of the estate of James Trask, are entitled to attorneys' fees?

## ANALYSIS

### I.

The function of a court reviewing summary judgment is to determine whether there are any genuine issues of material fact for trial, and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

### The 1,200 Hour Pilot Qualifications In Endorsement No. 1: A Condition or Representation?

MIGA asserts that endorsement no. 1, which requires Trask to have a certificate from the Federal Aviation Administration designating him a private pilot with a minimum of 1,200 total logged flying hours, is

a valid condition precedent to coverage that is permitted by Minn.Stat. § 60A.081, subd. 1.

Section 60A.081, subd. 1 of the Minnesota Statutes provides in part that:

No policy of insurance issued or delivered in this state covering any loss, damage, expense, or liability arising out of the ownership, maintenance, or use of an aircraft, shall exclude or deny coverage because the aircraft is operated in violation of federal or civil air regulations, state law or regulations, or local ordinances. *This section does not prohibit the use of specific exclusions or conditions in the policy which relate to:*

\* \* \* \* \* \*

(3) *Establishing requirements for pilot experience.*

\* \* \* \* \* \*

Minn.Stat. § 60A.081, subd 1 (1980) (emphasis added). MIGA asserts that the policy contains an express pilot qualification of 1,200 total logged flying hours that is clear and unambiguous, and argues that Trask did not have 1,200 logged hours.

In making its argument, MIGA claims that Minn.Stat. § 60A.08, subd. 9 is not controlling because it placed no reliance on Trask's misrepresentations of his total logged flying hours. Section 60A.08, provides in part that:

No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, *unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss.*

Minn.Stat. § 60A.08, subd. 9 (1980) (emphasis added). MIGA argues that it was reversible error for the trial court to apply Minn.Stat. § 60A.08, subd. 9 because Proprietors' denial of coverage was based on Trask's failure to comply with the condition of coverage. MIGA argues in the alternative, however, that if Minn.Stat. § 60A.08, subd. 9 is controlling, then the trial court erred in granting summary judgment on

the basis of this statute because issues exist as to Trask's intent to misrepresent and whether the alleged misrepresentation increased the risk of loss.

■ Our first inquiry is whether Minn. Stat. § 60A.08, subd. 9 (misrepresentation statute) or Minn.Stat. § 60A.081, subd. 1 (pilot qualification condition statute) is applicable. If endorsement no. 1 contains a valid 1,200 hour pilot experience condition, then Minn.Stat. § 60A.081, subd. 1 will control, otherwise Minn.Stat. § 608.08, subd. 9 applies.

A condition precedent is a stipulation that requires the occurrence of some event or the performance of some act after the parties have agreed to the terms of the contract but before the contract shall take effect. 7 G. Couch, *Cyclopedia of Insurance Law* § 35:2, at 13 (M. Rhodes rev. 2d ed. 1985). A condition precedent relates to the attachment of the risk. *Id.* § 36:46, at 476. A completed insurance contract does not arise until the insurer accepts the application and all conditions precedent to be performed have been performed. *League General Insurance Co. v. Tvedt*, 317 N.W.2d 40, 43 (Minn.1982) (citing *Rasmussen v. Prudential Insurance Co.*, 277 Minn. 266, 152 N.W.2d 359 (1967)).

A representation, in contrast, is an oral or written statement made by the insured prior to the completion of the contract that provides the insurance carrier with facts necessary to aid the carrier in determining whether to accept the risk and what premium to charge. 7 G. Couch, § 35:2, at 12. A representation is not a part of the insurance contract unless the parties clearly stipulate to the contrary. *Id.*

Still a third type of provision is a warranty, which is a statement on the face of the contract providing that the insured expressly contracts as to the existence of certain facts, the truth of which are essential to the validity of the insurance contract. *Id.*

MIGA contends that declaration item 7 and endorsement no. 1, taken together, restrict coverage to a plane piloted by James

Trask or Kirk Otto, provided they have 1,200 hours and 300 hours total logged flying hours respectively and that this restriction constitutes a valid condition precedent under Minn.Stat. § 60A.081, subd. 1.

MIGA is in error. Declaration item 7 and endorsement no. 1 combined do not constitute a condition precedent. Proprietors simply copied Trask's flying experience representations into endorsement no. 1 because nowhere does the application require a minimum pilot experience level as a condition precedent to coverage. The 1,200 hour representation is merely for purposes of identifying the insured. *See American States Insurance Co. v. Southwest Aircraft Leasing Inc.,* 717 F.2d 1189, 1190 (8th Cir.1983) (applying Minnesota law) (court apparently found that an aircraft insurance policy declaration item and endorsement nearly identical to those in the present case identified the pilot to be insured).

The language in endorsement no. 1 requiring Trask to have 1,200 logged pilot hours is a warranty that he and Otto would be the only pilots flying the aircraft. *See also Price v. Phoenix Mutual Life Insurance Co.,* 17 Minn. 497, 503–504 (Gil. 473) (1871) (statements made in an insurance application are representations unless converted into warranties by references to them in the policy).

The fact that Otto only had 300 hours of flying experience is additional proof of the purpose of using flight experience merely as an identification of the pilot covered. Because item 7 and endorsement no. 1 do not create a condition precedent to coverage, Minn.Stat. § 60A.081, subd. 1 is inapplicable. Thus MIGA must attempt to deny coverage under Minn.Stat. § 60A.08, subd. 9 to be successful in avoidance of these claims.

## II.

■ The trial court found no facts evidencing an intention on Trask's part to deceive and defraud Proprietors. The court further found that the alleged misrepresentation of 1,200 logged flying hours did not increase the risk of loss, basing its conclusion on affidavits of Proprietors' underwriter and claims manager in which they state that the alleged misrepresentation did not increase the risk of loss.

MIGA argues the existence of factual issues concerning intent to deceive and defraud and the risk of loss, and asserts that the affidavit of Proprietors' underwriter is internally inconsistent because in one sentence he stated that the premium charged was based on experience of Otto, who had only 300 total logged flying hours, and in another sentence he stated that so long as Trask had in excess of 750 total logged hours, the premium charge would have stayed the same. MIGA also argues that a fact issue exists as to Trask's flying hours, asserting that Trask's flight log books show that he had substantially less than 1,200 hours and that Trask's certification of 800 hours from a missing log book appears to be a gross exaggeration. Therefore, MIGA claims that Trask intentionally misrepresented his hours and that there was an increased risk of loss. Finally, MIGA contends that the trial court erred in estopping MIGA from challenging the hours in the missing log book because Proprietors failed to do so while Trask was alive.

■ Whether the statements Trask made in the application are viewed as warranties or representations, Minn.Stat. § 60A.08, subd. 9 applies. *See McLevis v. St. Paul Fire and Marine Insurance Co.,* 165 Minn. 468, 469, 206 N.W. 940, 941 (1926). With respect to Minn.Stat. § 60A.08, subd. 9, a breach of warranty has no more effect than a misrepresentation. *Id.* at 469, 206 N.W. at 941. The burden of proof on all issues of fact relative to the alleged misrepresentation is on the insurer. *Transamerican Insurance Co. v. Austin Farm Center, Inc.,* 354 N.W.2d 503, 506 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985) (citing *Preferred Risk Mutual Insurance Co. v. Anderson,* 277 Minn. 342, 347, 152 N.W.2d 476, 481 (1967).

## A. *Increased Risk of Loss.*

The concept of "risk of loss" refers to the likelihood that the insurance company will be liable in the future for the insured's negligent conduct. *Preferred Risk*, 277 Minn. at 350, 152 N.W.2d at 483. The chief underwriter at Proprietors, when the Trask policy was issued, stated in his affidavit that the discrepancy between Trask's represented and actual flying hours would not have affected the risk of loss or the underwriter's decision to accept the risk as long as Trask had more hours than Otto. He added that as long as Trask had more hours than Otto, 750 to be exact, the premium charged would not have changed. The underwriter opined that if Proprietors were a going concern today, coverage would be provided because the decision would be within the realm of his responsibility, and he would insist on coverage.

We find that MIGA has not presented a factual issue with respect to increased risk of loss. MIGA has presented no evidence showing the existence of any genuine issues of material fact, and thus has not sustained its burden of proof.

## B. *Intent to Deceive and Defraud.*

For purposes of this action, Trask agrees that her husband's log books show that James Trask had logged a total of 871.1 flying hours. MIGA asserts that Trask represented 1,200 hours while well aware that his actual logged hours were substantially less. Under the statute, Trask's misrepresentation, however false it may have been, is not to be deemed material and is not to avoid coverage, unless he made the misrepresentation with intent to deceive and defraud. MIGA has the burden of proving that Trask intended to deceive and defraud. The 1,200 hour figure was inserted by Proprietors into the policy solely for the purpose of identifying James Trask as an insured. Proprietors has introduced no evidence of reliance upon the 1,200 hour minimum when issuing the policy. It cannot now characterize that representation by Trask as an attempt to deceive and defraud under Minn.Stat. § 60A.08, subd. 9. MIGA has not sustained its burden.

## III.

### Attorneys' Fees

■ The trial court awarded attorneys' fees to Bette Trask as trustee of the next of kin of her husband and to the executor of the estate of James Trask, on the grounds that the fees were incurred in an attempt to force the insurer to provide indemnification. The trial court was correct.

The policy provides that Proprietors will pay "all reasonable expenses * * * incurred by the insured at the Company's request." Although neither Bette Trask nor the executor of James Trask's estate is the named insured under the policy, each is, in effect, the insured because each is asserting a claim of the insured. In addition, in this declaratory judgment action, Trask and Northwestern National Bank of Minneapolis have been forced to defend an action initiated by MIGA and Proprietors. Because the defense of this action was incurred "at the Company's request," the trial court properly awarded attorneys' fees. *See Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 171, 226 N.W.2d 878, 885 (1975). To deny attorney's fees incurred in establishing coverage would work a substantial hardship. *Id.* at 171, 226 N.W.2d at 885.

In bringing the declaratory judgment action against both Bette Trask and the executor, Proprietors treated both as insureds. Its argument that they are third party claimants is specious.

### DECISION

The policy of aircraft insurance issued by Proprietors did not contain a condition precedent to coverage. The policy was not voided by any misrepresentation of the insured. Attorneys' fees are properly awarded to Bette Trask as trustee for the next of kin of her husband and the executor of the estate who were required to defend the

declaratory judgment action commenced by Proprietors.

Affirmed.