CROWN COCO, INC., Respondent,

v.

RED FOX RESTAURANT OF
ROYALTON, INC., et al.,
Appellants.

No. C8–87–27.

Court of Appeals of Minnesota.

Aug. 11, 1987.

Review Denied Oct. 21, 1987.

George B. Wyeth, Minneapolis, for re-
spondent.

Michael P. Perry, Perry & Godzala, Little Falls, for appellants.

Considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

Crown CoCo, Inc., sued to collect unpaid rent and taxes owed by appellants under the terms of a ten-year real estate lease. Appellants, who had paid rent through the fifth year, maintained that the lease was unenforceable because it did not sufficiently describe the premises. The trial court awarded unpaid rent due from March 1, 1984, through August 1, 1986, and unpaid taxes from 1983 through the first half of 1986. Appellants' motion for amended findings or a new trial[1] was denied, and they appeal. We affirm.

## FACTS

Crown CoCo, Inc., operates a chain of gas station/convenience stores under the business name "E-Z Stop." One of the stores is located in Royalton, Minnesota, on U.S. Highway 10. Crown CoCo owns most of the block on which the E-Z Stop station is located, including a one-story building at the opposite end of the block, formerly operated as a grocery store.

In May 1978 Crown CoCo entered into an agreement with Red Fox Restaurant of Royalton, Inc. (Red Fox), along with Harley Miller, individually, to remodel the vacant grocery store, converting it into a restaurant. Red Fox and Miller proposed to rent the remodeled building and whatever portion of the adjacent parking lot necessary to operate the restaurant. The parties executed a lease, dated May 26, 1978, with Red Fox as lessee and Miller, individually, as lessee and guarantor. The lease ran for a period of ten years with possession beginning on March 1, 1979. Monthly rental was set at $1,000 for the first five years and $1,500 for the last five years,

plus an escalator of 7 percent of gross monthly receipts. The lease also provided for payment of real estate taxes, and appellants paid taxes under the lease from 1979 to 1982.

The remodeling agreement required Crown CoCo to install an adequate furnace and air conditioning system. Miller arranged for the installation of the system for a cost of $6,900, but Crown CoCo refused to reimburse him.

Red Fox began operating its restaurant in the leased premises in March 1979. Three years later, in April 1982, Red Fox and Miller assigned their lease interests to appellants Schmaltz and Russell, who individually assumed the tenants' obligations under the lease. Red Fox and Miller remained liable under the assignment.

The assignees closed the restaurant in November of 1982, but continued to pay rent through February 1, 1984. Beginning in March 1984, when the rent under the lease increased from $1,000 to $1,500 per month, appellants refused to make further payments. The parties stipulated at trial that the total unpaid rent was $45,000 and that appellants had not contributed to the payment of real estate taxes due in the years 1983 through the first half of 1986.

The trial court awarded Crown CoCo $45,000 in unpaid rent due from March 1, 1984, through August 1, 1986, and $9,521 for taxes payable in 1983 through the first half of 1986. The court permitted appellants an offset of $6,900 on their counterclaim for the air system installed in the building.

## ISSUES

1. Is the description of the demised premises sufficiently definite to be enforceable?

2. Did the trial court properly compute the amount of taxes due under the lease?

## ANALYSIS

The trial court found that the lease between Crown CoCo and Red Fox covered

---

1. In an order dated February 4, 1987, this court dismissed all other grounds for appeal, stating that review is limited to the grounds assigned as error in the motion for a new trial. *Beckman v. Universal Enterprises, Inc.*, 367 N.W.2d 577, 579 (Minn.Ct.App.1985).

the restaurant structure and the land beneath it and was sufficiently definite to bind the parties to the lease. Appellants claim that there is no evidence to support this finding.

To prevail, appellants must show that the trial court's findings of fact and conclusions of law are "manifestly contrary to the evidence" and "clearly erroneous." *Preferred Risk Mutual Insurance Co. v. Anderson*, 277 Minn. 342, 344, 152 N.W.2d 476, 479 (1967); Minn.R.Civ.P. 52.01. In evaluating the record, the evidence must be viewed in the light most favorable to the prevailing party. *Theisen's, Inc. v. Red Owl Stores, Inc.*, 309 Minn. 60, 66, 243 N.W.2d 145, 149 (1976).

## I

Appellants argue that the lease is unenforceable because of a defect in the legal description. The lease describes the premises as follows:

> That portion of Lots 5 through 18 in Block 2 of P.A. Greene's Addition to the Town (now City) of Royalton, Minnesota (Parcel formerly occupied by Pearson's Grocery Store, more particularly described on drawing attached hereto).

No drawing was attached to the lease or later furnished. Although it was not determined that a drawing had never existed, none was produced at trial. The issue is, therefore, whether the lease is enforceable without the drawing.

■ It is axiomatic that a lease must provide a reasonably certain means of identifying the demised property. A description of land is sufficient if it "provides, when applied to the physical features of the surrounding terrain, a reasonably certain guide or means for identifying such land * * *." *Greer v. Kooiker*, 312 Minn. 499, 506, 253 N.W.2d 133, 139 (1977) (quoting *Miracle Construction Co. v. Miller*, 251 Minn. 320, 323, 87 N.W.2d 665, 669 (1958)).

■ Parol evidence may be considered to complete the identification of the leased property. *Greer*, 312 Minn. at 505, 253 N.W.2d at 138–139; *Gustafson v. Juckem*, 164 Minn. 516, 205 N.W. 446 (1925) (parol evidence permitted to show extent of leasehold identified only by name of apartment building and street number); *see also Paynesville Land Co. v. Grabow*, 160 Minn. 414, 423, 200 N.W. 481, 485 (1924).

■ The lease describes the property as "[t]hat *portion* of Lots 5 through 18 in Block 2 of P.A. Green's Addition * * * (Parcel formerly occupied by Pearson's Grocery Store * * * )" (emphasis added). Therefore, the lease itself suggests that the leased property included only the property on which the building is located and the building itself. Minnesota case law early established that "[l]and may be granted or leased by the description of a building on it." *Lanpher v. Glenn*, 37 Minn. 4, 5, 33 N.W. 10, 11 (1887). Case law also establishes that the lease of a building is a lease of the land on which it stands. *Target Stores, Inc. v. Twin Plaza Co.*, 277 Minn. 481, 494, 153 N.W.2d 832, 841 (1967) (citing *Lanpher v. Glenn* ).

Additional evidence supports the trial court's conclusion. The grocery store/restaurant was a readily identifiable part of Lots 5 through 18. The lease was executed only after the parties had completed an inspection of the site and the vacant grocery store. The remodeling agreement was executed with reference to that building, and appellants insured the premises and included the disputed legal description in their own agreement for the sale of the Red Fox chain.

Although appellants did not raise the issue of parking space in their pleadings, they maintained at trial that the failure to describe the parking space contributed to the indefiniteness of the lease.

The parking area is a single, undifferentiated strip of blacktop running from one end of the block to the other, with no physical demarcation between the restaurant on one end of the block and the gas station on the other. The lease made no specific provision for any part of the parking areas to be used exclusively by the restaurant. Testimony by appellant Miller indicates only that Red Fox had been assured that it "would have adequate park-

ing." There was no testimony to support a claim that the parties intended to separate the lot and designate a portion as "leased" parking.

The issue of parking as a basis for rescission appears contrived. Crown CoCo does not dispute appellants' right to use the common parking area. The parking lot has been jointly used during the five-year lease period, particularly during the three-year restaurant occupancy. Shopping centers and malls characteristically use shared parking space. The court's finding of common, undifferentiated use of entry, exit and parking is supported by the evidence.

 It is significant that appellants occupied and operated the building until November 1982. A tenant who has taken possession of the premises and paid rent under the lease may not later rely on an alleged defective description to avoid rent and other obligations under the lease. *See Capital Outdoor Advertising, Inc. v. Harper,* 7 N.C.App. 501, 172 S.E.2d 793 (1970); *Politte v. Coleman,* 340 S.W.2d 129 (Mo. App.1960); *see generally* Annotation, *Estoppel of lessee, because of occupancy of, or other activities in connection with, premises, to assert invalidity of lease because of irregularities in description or defects in execution,* 84 A.L.R.2d 920 (1962).

These holdings can be analyzed under the theory that the actual occupancy removed any ambiguity in the description of the leasehold or, alternatively, that occupancy justifies the application of estoppel. The rationale for the estoppel rule is that a tenant should not be allowed to remain in possession and retain the benefits of the lease without having a corresponding obligation to pay the rent. Appellants argue that the estoppel theory is inapplicable because they have closed the restaurant and stopped using the property. The facts of this case are similar to those in *Politte,* where the lessee also abandoned the property. The court affirmed the landlord's right to collect additional rent due under the lease, holding that the tenant's abandonment of the property does not make a lease voidable at the tenant's discretion. *Politte,* 340 S.W.2d at 130.

The prejudice to Crown CoCo which supports estoppel lies not only in appellants having occupied the premises and being able to assert their rights under the lease, but also Crown CoCo's reasonable reliance on the existence of a long-term lease. The existing lease prevented them from seeking other potential tenants who might have fulfilled a long-term lease obligation.

## II

 Appellants also contest the amount of taxes they owe under the lease. The lease, a commercially preprinted form (portions inserted by the parties are underlined), requires tax payments as follows:

It is also agreed between lessor and tenant that in case the taxes paid by the lessor upon the property of which the within leased premises are a part, shall in any year or years during the term of this lease be increased over and above the sum of *Five Hundred ($500.00)* Dollars *per year ($500.00)* annually, then the tenant shall pay as part of the annual rental of said premises, for such year or years, in addition to the amount hereinbefore named, an amount equal to such increases.

* * * Taxes shall include special assessments and all other items or charges.

In interpreting the tax clause the trial court also relied on a letter of intent dated January 25, 1978, which preceded the signing of the lease. Paragraph 4 of that letter states:

Crown will pay the first Five Hundred ($500.00) Dollars of real estate taxes and the Red Fox will pay the remainder of the taxes each year on the restaurant property.

The trial court awarded Crown CoCo a total of $9,521 for unpaid taxes payable in the years 1983 through the first half of 1986. Although the court did not directly state, it apparently limited the tax to the value of the restaurant building and the underlying land. This holding is consistent with the court's determination of the leasehold interest. After determining the total

taxes attributable to the restaurant property, the trial court then deducted $500 in each year based on the lease. The remainder is taken to be the tax owed by appellants.

Appellants suggest two alternative methods of calculating the tax which they contend reflect the actual intent of the parties. The first computes the difference between the taxes paid in each year on lots 5 through 15 and those paid in the preceding year and then subtracts $500. As part of this formula, appellants use a base year of 1980; thus, taxes would not be owed until 1981, even though their tenancy began on March 1, 1979.

Appellants' second method of calculating the tax includes the use of a "fixed base" formula. This calculation also includes an assumption that there should be no taxes payable on the improved property until 1981, even though tenancy began in March of 1979.

The trial court's calculation of the tax parallels the terms of the lease and the letter of intent. The lease on its face makes no mention of any "base year," either fixed or rolling, but provides that if the taxes are increased over and above a flat sum, the tenant should pay the amount of that increase. The trial court's reading of the lease follows *Kopesky v. Precision Gasket Company,* 279 Minn. 223, 156 N.W.2d 205 (1968), which involved an interpretation of the very clause at issue in this case.

Neither the language of the lease nor the letter of intent supports appellants' proposed calculation of appellants' tax liability. The most consistent conclusion is the one followed by the trial court—that the taxes should be calculated on the restaurant building and the land on which it is situated.

### DECISION

The trial court's findings of fact and conclusions of law are not manifestly contrary to the evidence nor clearly erroneous.

The evidence sufficiently supports the trial court's decision.

Affirmed.

SEDGWICK, J., dissents.

SEDGWICK, Judge (dissenting).

I respectfully dissent. The majority statement that evidence supports a conclusion that the lease was intended to extend only to the restaurant structure is pure conjecture. The description of the premises in the lease, without the drawing which "more particularly described" the parcel being covered by the agreement, is totally insufficient to describe the extent of the lease. The description given is:

> That portion of Lots 5 through 18 in Block 2 of P.A. Greene's Addition to the Town (now City) of Royalton, Minnesota (Parcel formerly occupied by Pearson's Grocery Store, more particularly described on drawing attached hereto).

The "Parcel formerly occupied by Pearson's Grocery Store," is qualified by the clause *"more particularly described on drawing attached hereto."* There is no drawing. The description does not say the building or structure formerly occupied by Pearson's Store, it says "parcel."

The majority accurately states that Red Fox and Miller proposed to rent the remodeled building *and whatever portion of the adjacent parking lot was necessary to operate the restaurant.* Although Red Fox and its sublessee operated the restaurant for a period without disagreement over what the description included, the present construction of the leased premises effectively eliminates further assignment or use of the leased premises. Parking space is not covered by the trial court's and majority's construction. This building is in Royalton, adjacent to Minnesota Highway 10, a major North-South arterial highway. It would be unreasonable and illogical to suppose that Pearson's grocery store could have done business adjacent to Highway 10 without parking. Parking was intended by the parties here and is necessary to operation of the restaurant. The trial court found that "the premises adjoining and to the south of the leased premises were

owned by plaintiff and used as a gas station, grocery convenience store and motel; *entrances, exits and parking space were used in common by both parties."* Minn. Stat. 513.05, Leases; contracts for sale of lands, provides:

Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, *shall be void* unless * * * in writing.

If the trial court's finding is upheld, Red Fox and Miller are liable on a lease they cannot use or sublet because the building is useless without parking, and any agreement on parking not covered by the lease is void under the statute of frauds. Without the drawing, we don't know what parcel was formerly occupied by Pearson's Grocery or what parcel is subject to tax. I would reverse.